832 So.2d 138 (2002)
Donald KAPLAN, Assignee for the Benefit of Creditors of Medical Research Industries, Appellant,
v.
COWAN LIEBOWITZ & LATMAN, P.C., et al., Appellees.
No. 3D01-2081.
District Court of Appeal of Florida, Third District.
October 23, 2002.
Rehearing Denied December 11, 2002.
Fowler White Burnett and David A. Friedman and Steven E. Stark, Miami, for appellant.
*139 Hogan & Hartson and Laura Besvinick, Miami; Kubicki Draper and Caryn L. Bellus; Stephens Lynn Klein Lacava Hoffman & Puya and Marlene S. Reiss; Walton Lantaff Schroeder Carson and Deborah Poore Knight and Jonathan J. Davis, for appellees.
Before SCHWARTZ, C.J., and JORGENSON and FLETCHER, JJ.
FLETCHER, Judge.
Medical Research Industries, Inc. [MRI] was a Florida corporation in the business of marketing medical products, intending to raise money for capital improvements through the sale of shares via private placement memoranda. The majority shareholder, CEO, Chairman, secretary, treasurer, and director of MRI, William Tishman, consulted his attorney at Parker and Platt [P & P] for corporate legal advice. P & P recommended the services of certain attorneys at Franzino & Rosenberg [F & R] who had the requisite corporate securities expertise.[1] The Attorneys advised MRI on securities issues, and prepared private placement memoranda.
MRI raised over $50,000,000 from approximately 2,000 shareholders through four private placements over two and a half years. Tishman borrowed about $18,000,000 from MRI in the form of unsecured loans, from the monies raised through the private placements. As a result, MRI became insolvent.
MRI executed an assignment to Donald Kaplan for the benefit of creditors. Kaplan then brought a legal malpractice suit against the Attorneys alleging that they knew or should have known that the private placement memoranda were false and misleading because they failed to disclose that the money raised was not used for business expansion but for unsecured loans to Tishman. Kaplan alleged that the Attorneys wrote and approved the unsecured loans from the private placements and were consulted as to the loan amount. Kaplan also alleged that the shares were not exempt and should have been registered with the SEC. The Attorneys filed motions to dismiss, which motions the trial court granted, reasoning that Kaplan lacked standing under Florida law as legal malpractice claims are personal and not assignable, and are exempt from levy and sale under an execution of assignment. We reverse the dismissals.
The issue before us is whether an assignee (actually transferee) acting as a fiduciary for a corporation has standing to bring a legal malpractice action on behalf of the now-defunct corporation. The trial court relied for its dismissal upon Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557 (Fla.1997), which recognizes the general prohibition in Florida of the ordinary assignment of legal malpractice claims because of the highly personal nature of legal representation and confidentiality. The trial court also relied upon KPMG Peat Marwick v. National Union Fire Ins. Co., 765 So.2d 36 (Fla.2000), for the same principle. Forgione, however, was modified by KPMG. The KPMG court allowed a professional malpractice claim against an independent auditor to be asserted by an assignee or subrogee. The KPMG court concluded that the public policies discussed in Forgione (requiring attorney malpractice claims to be non-transferable as personal torts) do not apply where the claims involve reliance on the allegedly confidential information by interests other than the entity for whom *140 the information was prepared. KPMG at 38-39. The KPMG court determined that where an entity "assumes a public responsibility transcending any employment relationship with the client ..." that entity "owes ultimate allegiance to the corporation's creditors and stockholders, as well as to investing public." KPMG at 38.
The Attorneys were retained for the purpose of writing the private placement memoranda and for making loans to the controlling director. The communications between the corporation and the Attorneys which form the basis of Kaplan's claim are those regarding the information set forth in the private placement memoranda. The corporate client and the Attorneys disclosed the content of their communications to numerous third parties including the shareholders, and to the untold number of prospective shareholders constituting the investing public. MRI had over 2,000 shareholders that reasonably relied on the private placement memoranda prepared by the Attorneys.[2]
Kaplan, as assignee for benefit of creditors, has the legal charge of gathering and liquidating the assets of the corporation. In that regard Kaplan is no different from a trustee in bankruptcy who has full standing to bring a debtor's legal malpractice claim. Because the legal services at issue here are not personal in nature but involved the publication of corporate information to third parties, i.e., the investors, the policies underlying the prohibition of bare assignment of legal malpractice claims are inapplicable under these circumstances. Kaplan has standing to bring the claims for malpractice against the Attorneys.
For the same reasons as set forth above, we further hold that the trial court incorrectly determined that such claims are exempt by law from levy and sale under an execution of assignment, pursuant to section 727.104, Florida Statutes (2000), the Assignment for Benefit of Creditors statute.
We reverse the trial court's order and remand for further proceedings consistent with this opinion.
NOTES
[1] P & P, F & R, and the individual attorneys named in the suit are collectively referred to as the Attorneys.
[2] The Attorneys' conduct was governed by the Rules Regulating the Florida Bar 4-1.13, which states that a lawyer "shall proceed as is reasonably necessary in the best interest of the [corporation]." R. Regulating Fla. Bar 4-1.13(b). Kaplan alleges that the Attorneys participated in a fraud on the public in connection with the sale of securities and aided a director in actions relating to their representation of the corporation in violation of the director's legal fiduciary obligation, which violation could reasonably be imputed to the corporation. Here, the controlling shareholder/director was the corporate constituent whose conduct would eventually cause the harm. See Comment to R. Regulating Fla. Bar 4-1.13 (corporate constituents are not the client; and "discussions between the lawyer for the corporation and the constituent may not be privileged."). The rules of evidence and professional conduct make clear that the communications concerning the private placements were neither privileged, confidential, nor of such a personal nature as to warrant non-disclosure. See Kneale v. Williams, 158 Fla. 811, 30 So.2d 284 (1947)("It is well settled that the perpetration of fraud is outside the scope of the professional duty of an attorney and no privilege attaches to a communication and transaction between an attorney and client with respect to transactions constituting the making of a false claim or the perpetration of a fraud."). The Attorneys may disclose information to the extent necessary to defend against the malpractice claim. R. Regulating Fla. Bar 4-1.6(c). There is thus no concern for privilege or confidentiality regarding the Attorney-Corporation communications that involved the private placement memoranda.