902 So.2d 755 (2005)
COWAN LIEBOWITZ & LATMAN, P.C., et al., Petitioners,
v.
Donald KAPLAN, etc., Respondent.
No. SC03-59.
Supreme Court of Florida.
March 17, 2005.
Rehearing Denied May 10, 2005.
*756 Laura Besvinick of Hogan and Hartson, LLP, Miami, FL on behalf of Cowan, Liebowitz and Latman, P.C.; Robert Michael Klein and Marlene S. Reiss of Stephens, Lynn, Klein, Lacava, Hoffman and Puya, Miami, FL on behalf of Stephen M. Rosenberg and James J. D'Esposito; Caryn Bellus of Kubicki Draper, P.A., Miami, FL on behalf of Franzino and Rosenberg, P.C.; and Deborah Poore Knight of Walton, Lantaff, Schroeder and Carson Corporate Center, Fort Lauderdale, FL on behalf of Marshall Platt, Marshall Douglas Platt, P.A., Jack B. Packer, P.A. and Packer and Platt, for Petitioner.
Steven E. Stark and David A. Friedman of Fowler White Burnett, P.A., Miami, FL, for Respondent.
Daniel S. Green of Ullman and Kurpiers, LLC and Tracy Raffles Gunn of Fowler, White, Boggs and Banker, P.A, Tampa, FL on behalf of Florida Defense Lawyers' Association and Paul Steven Singerman, Ilyse M. Homer and Paul A. Avron of Berger Singerman, P.A., Miami, FL on behalf of the Business Law Section of the Florida Bar, as Amici Curiae.
CANTERO, J.
In this case, we decide whether a potential plaintiff may assign a legal malpractice claim involving the preparation of private placement memoranda. In two prior cases, we allowed the assignment of other types of claims, contrasting them to claims for legal malpractice, which we stated were not assignable. See Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557 (Fla.1997) (permitting the assignment of claims against an insurance agent); KPMG Peat Marwick v. Nat'l Union Fire Ins. Co., 765 So.2d 36 (Fla.2000) (permitting the assignment of claims against an accountant conducting an independent audit). In the decision below, the Third District Court of Appeal permitted the assignment of a legal malpractice claim, analogizing an attorney preparing private placement memoranda to the accountant conducting an independent audit we described in KPMG. See Kaplan v. Cowan Liebowitz & Latman, P.C., 832 So.2d 138, 140 (Fla. 3d DCA 2002). That holding expressly and directly conflicts with our statements in KPMG and Forgione (albeit in dictum) implying a blanket prohibition against assignment of legal malpractice claims. Therefore, we accepted jurisdiction. Cowan Liebowitz & Latman, P.C. v. Kaplan, 844 So.2d 645 (Fla.2003) (table); see art. V, § 3(b)(3), Fla. Const; see also Watson Realty Corp. v. Quinn, 452 So.2d 568, 569 (Fla.1984) (accepting jurisdiction based on conflict between the district court opinion and dictum in a prior Supreme Court case and receding from the dictum). For the reasons explained below, we approve the district court's decision. *757 We agree that because lawyers preparing private placement memoranda, like independent auditors, owe a duty to those who rely on statements contained in their published documents, parties may assign claims for legal malpractice committed in preparing them. We therefore recede from the broad dicta in KPMG and Forgione purporting to prohibit the assignment of all legal malpractice claims. Nevertheless, we stress that the vast majority of legal malpractice claims remain unassignable because in most cases the lawyer's duty is to the client.

I. FACTS
Medical Research Industries, Inc. (MRI), a Florida corporation, developed and marketed homeopathic medical products. To raise money for capital improvements, MRI decided to issue a private placement of shares in the company. MRI's majority shareholder, William Tishman, consulted attorneys who prepared private placement memoranda. Through four private placements between 1996 and 1998, MRI raised over $50 million from about 2000 shareholders. Later, Tishman borrowed about $18 million in unsecured loans from MRI, leading to its eventual insolvency. MRI sued Tishman to recover the loan amount and obtained a judgment. Unable to satisfy the judgment, however, MRI executed an "Assignment for the Benefit of Creditors" to Donald Kaplan.[1] Kaplan then sued for legal malpractice the attorneys who prepared the private placement memoranda. The trial court granted the attorneys' motions to dismiss, concluding that legal malpractice claims are personal and not assignable and are exempt from levy and sale under an execution of assignment.
On appeal, the Third District reversed. It held that Kaplan had standing to bring the legal malpractice claims against the attorneys "[b]ecause the legal services at issue [were] not personal in nature but involved the publication of corporate information to third parties, i.e., the investors" and therefore "the policies underlying the prohibition of bare assignment of legal malpractice claims are inapplicable." Kaplan, 832 So.2d at 140. The district court relied on KPMG's holding that the relationship of a corporate client to an independent auditor does not implicate the same confidentiality concerns as the typical attorney-client relationship. Id.; see KPMG, 765 So.2d at 38. The court concluded that such concerns were not present in this case either, because the attorneys shared their information with third parties  i.e., shareholders and the investing public. The court also held that because Kaplan, as an assignee for the benefit of creditors, was charged with gathering and liquidating MRI's assets, "Kaplan is no different from a trustee in bankruptcy who has full standing to bring a debtor's legal malpractice claim." 832 So.2d at 140.

II. ANALYSIS
We agree with the district court that the public policy concerns with permitting the *758 assignment of legal malpractice claims are substantially attenuated, if they exist at all, when attorneys prepare private (or public) placement memoranda. In such circumstances, attorneys act much as accountants do in performing independent audits. That is, they act not just for the corporation's benefit, but for the benefit of all those who rely on the representations in their documents  in this case, potential shareholders. Because we approve the district court's holding on this ground, we need not consider the court's alternative theory of assignability: that an assignee for the benefit of creditors is analogous to a bankruptcy trustee, to whom legal malpractice claims may be transferred. See 832 So.2d at 140; In re Alvarez, 224 F.3d 1273, 1279 (11th Cir.2000) (holding that a legal malpractice claim arising from bankruptcy counsel's alleged negligence was "property of the estate" under 11 U.S.C. 541(a)(1)).
Below we discuss (A) our previous cases addressing the assignability of legal malpractice claims; (B) the role and duties of attorneys preparing private placement memoranda; and (C) why assignments of claims against attorneys involved in private placement memoranda do not implicate the public policy concerns generally associated with the assignment of legal malpractice claims.

A. Forgione and KPMG

As noted above, we previously have discussed the assignability of legal malpractice claims in two cases that did not involve such claims. In Forgione, we considered whether an insured could assign a claim for negligence against an insurance agent for failure to obtain proper coverage. 701 So.2d at 558. We said yes, reasoning that parties can assign causes of action derived from a contract or statute. Id. at 559. We compared the relationship between a prospective insured and an insurance agent with the attorney-client relationship. We noted that in contrast to the former relationship, the attorney-client relationship is confidential and personal and thus cannot be assigned: "Florida law views legal malpractice as a personal tort which cannot be assigned because of `the personal nature of legal services which involve highly confidential relationships.'" 701 So.2d at 559 (quoting Washington v. Fireman's Fund Ins. Co., 459 So.2d 1148, 1149 (Fla. 4th DCA 1984)).
Several years later, we permitted the assignment of a claim against an independent auditor for professional malpractice in preparing an audit. See KPMG, 765 So.2d at 39. As in Forgione, we noted that legal malpractice claims are not assignable "because of the personal nature of legal services which involve a confidential, fiduciary relationship of the very highest character, with an undivided duty of loyalty owed to the client." KPMG, 765 So.2d at 38. We found that unlike an attorney, who must zealously represent a client in an adversarial setting, "an independent auditor who is hired to give an opinion on a client's financial statements must do so with an independent impartiality which contemplates reliance upon the audit by interests other than the entity upon which the audit is performed." Id. We distinguished the public policy reasons discussed in Forgione that prohibit assignment of legal malpractice claims because "[r]ather than acting as an advocate with an undivided duty of loyalty owed a client, an independent auditor performs a different function." 765 So.2d at 38.

B. Private Placement Memoranda
We agree with the district court that the role of the attorneys in this case was similar to that of the independent auditors in KPMG. The claim is based on the attorneys' preparation of private placement memoranda and communications surrounding *759 their production.[2] The memoranda disclosed information to MRI's shareholders and many potential investors. Like the independent auditors in KPMG, the attorneys intended that third parties would rely on the representations made in the memoranda. The legal services at issue, therefore, were not personal but involved publication of corporate information.
In a similar context, securities lawyers have been held to owe a duty to the public. In Securities & Exchange Commission v. Spectrum, Ltd., 489 F.2d 535, 541-42 (2d Cir.1973), the Second Circuit held:
The legal profession plays a unique and pivotal role in the effective implementation of the securities laws. Questions of compliance with the intricate provisions of these statutes are ever present and the smooth functioning of the securities markets will be seriously disturbed if the public cannot rely on the expertise proffered by an attorney when he renders an opinion on such matters.
See also Kline v. First W. Gov't Sec., Inc., 24 F.3d 480, 485-86 (3d Cir.1994) (concluding that "attorneys may be liable [to investors] for both misrepresentations and omissions where the result of either is to render an opinion letter materially inaccurate or incomplete"); Felts v. Nat'l Account Sys. Ass'n, Inc., 469 F.Supp. 54, 67 (N.D.Miss.1978) ("The lawyer for the issuer plays a unique and pivotal role in the effective implementation of the securities laws. As a result, special duties are imposed on the lawyer.").
As these examples illustrate, lawyers often have public duties beyond those owed to the clients. The attorneys in this case produced the private placement memoranda knowing they would be distributed to the public and that potential investors would rely on them.

C. The Specter of a Market for Legal Malpractice Claims
The circumstances of this case do not implicate the public policy concerns behind the prohibition on assignment of legal malpractice claims. The majority of state courts considering this issue prohibit the assignment of legal malpractice claims, mostly based on public policy concerns.[3] *760 See Can Do, Inc. Pension & Profit Sharing Plan v. Manier, Herod, Hollabaugh & Smith, 922 S.W.2d 865, 867 (Tenn.1996) ("Public policy is ... the primary consideration upon which courts from other jurisdictions have focused in determining the assignability of a legal malpractice action."); Wagener v. McDonald, 509 N.W.2d 188, 190 (Minn.Ct.App.1993) (same).
Courts are mainly concerned about creating a market for legal malpractice claims. As one California court noted:
It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty.... The commercial aspect of assignability of... legal malpractice [actions] is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.
Goodley v. Wank & Wank, Inc., 62 Cal. App.3d 389, 133 Cal.Rptr. 83, 87 (1976); see also Can Do, Inc., 922 S.W.2d at 869 (noting that "assignment of legal malpractice actions would both endanger the attorney-client relationship and commercialize legal malpractice lawsuits").
We expressed similar concerns in KPMG and Forgione, although much more superficially because those cases did not *761 involve legal malpractice. See KPMG, 765 So.2d at 38 (noting that legal malpractice claims are not assignable because of the personal nature of legal services, involving a "confidential, fiduciary relationship of the very highest character, with an undivided duty of loyalty owed to the client"); Forgione, 701 So.2d at 559 (noting that Florida law views legal malpractice as a personal tort that cannot be assigned because of the personal nature of legal services which involve highly confidential relationships).
We reiterate these concerns. They continue to prevent the assignment of most legal malpractice claims. However, they do not arise in these circumstances. The claim MRI assigned to Kaplan does not involve personal services or implicate confidentiality concerns. As discussed above, the attorney's services for MRI involved publication of information to third parties. The attorneys owed a duty to the public when advising MRI and preparing the private placement memoranda.
With respect to confidentiality, this situation parallels that of securities lawyers claiming the attorney-client privilege in third-party suits based on inaccurate or misleading securities filings. The federal cases dealing with securities lawyers stress that information intended for release to third parties is not covered by the privilege. See United States v. Moscony, 927 F.2d 742, 752 (3d Cir.1991) ("The ultimate key to determining confidentiality is intent ..."). In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir.1984), involved the disclosure of attorney-client communications about the creation of a prospectus intended for use in a private placement. Even though the prospectus was never released, the court held that the communications were not privileged because the information in the prospectus was intended for public release: "[c]ourts have consistently `refused to apply the privilege to information that the client intends his attorney to impart to others ...,' or which the client intends shall be published or made known to others." Id. at 1356 (citing United States v. Pipkins, 528 F.2d 559, 563 (5th Cir.), cert. denied, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976)); see In re Micropro Sec. Litig., No. C-85-7428 EFL, 1988 WL 109973, at *2 (N.D.Cal. 1988) (citing In re Grand Jury Proceedings and holding that preliminary drafts of public offering materials were not protected by the privilege because there was intent to disclose the information to third parties).
In this case, the documents the attorneys prepared not only were intended for release; they were released to third parties. Therefore, communications between MRI and the attorneys would not be protected in a third-party suit and concerns for confidentiality do not apply.

III. CONCLUSION
For the reasons stated, we approve the district court's holding that legal malpractice claims involving private placement memoranda may be assigned.[4] Because of our resolution of the case on this issue, we need not address the district court's alternative holding that the claims may be assigned because an assignee for the benefit of creditors is analogous to a trustee in bankruptcy, who can receive assignments of legal malpractice claims. See 832 So.2d at 140. The decision of the district court is approved and the case is remanded for *762 further proceedings consistent with this opinion.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
LEWIS, J., concurs in result only with an opinion.
LEWIS, J., concurring in result only.
While I concur in the result in this matter, I cannot subscribe to the broad reasoning employed by the majority and its unnecessary reliance on broad concepts of general assignability that I believe to be inapplicable to the instant matter. The question presented to the Court today can and should be resolved simply with the analysis and application of the governing statute  the Assignment for the Benefit of Creditors contained in Chapter 727 of the Florida Statutes. Giving effect to the plain meaning of that statute  as time-tested principles of statutory interpretation guide us to do, see Holly v. Auld, 450 So.2d 217 (Fla.1984)  permits the assignment of the legal malpractice claim at issue here. This Court need not and should not widen the scope of analysis to invoke principles that govern the discrete assignment of singular assets beyond the context of the Assignment for the Benefit of Creditors statute.
As the text of the Assignment for the Benefit of Creditors statute makes clear, the intent and purpose of the law is to "provide a uniform procedure for the administration of insolvent estates, and to ensure full reporting to creditors and equal distribution of assets according to priorities as established under this chapter." § 727.101, Fla. Stat. (2000). In almost all cases, the law is invoked in an overall liquidation, and does not apply in scenarios involving the assignment of single professional malpractice claims of the type at issue in Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557 (Fla.1997), and KPMG Peat Marwick v. National Union Fire Insurance Co., 765 So.2d 36 (Fla.2000). For that reason, Forgione and KPMG and the dicta therein discussing the general unassignability of legal malpractice claims are, in my view, completely inapposite in the present analysis.
Examination of the plain language of the Assignment for the Benefit of Creditors statute  the legal construct applicable here  makes clear the debtor's ability to assign legal malpractice claims in this limited context. Under the statute, the assignee for the benefit of creditors must "[c]ollect and reduce to money the assets of the estate, whether by suit in any court of competent jurisdiction or by public or private sale." § 727.108(1), Fla. Stat. (2000). The assignee for the benefit of creditors has the power to conduct the debtor's business, marshal and liquidate its assets, and receive its claims. See § 727.108(1), (4)-(5), Fla. Stat. (2000). It naturally follows that the assignee should also have the right to seek recovery against any third party that may be responsible for those claims as an asset of the debtor. Indeed, I agree with Kaplan in the assertion that the assignee for the benefit of creditors cannot be made responsible for claims if he or she is not permitted to seek redress for damages from the responsible party on those claims. Concluding that a debtor may not assign a legal malpractice claim under the statute would clearly frustrate the intent of the law and the statutorily prescribed duties of the assignees.
Moreover, the statute clearly contemplates that a debtor's estate should include legal claims. According to the statute, the assets of the assignor include "claims and demands belonging to the assignor" without *763 limitation. § 727.104(1)(b), Fla. Stat. (2000). In commencing a proceeding under the statute, the debtor must list items enumerated in the statute, including "claims, and choses in action." § 727.104(1)(d), Fla. Stat. (2000). Petitioners must fail in their contention that legal malpractice claims fall outside the ambit of the statute because the definition of "asset" explicitly excepts property "exempt by law from forced sale." § 727.103(1), Fla. Stat. (2000). Petitioners support their argument only with cases that assess the assignability of legal malpractice and personal tort claims generally, which, again, have no application in the present statutory context.
Kaplan acquired his interest in the legal malpractice claim along with all of MRI's other assets by operation of law. This is not a case governed by the general non-statutory concepts of assignability framing the debate in Forgione and KPMG, but by a specific statutory scheme governing the duties and liabilities of assignees for the benefit of creditors. Accordingly, I concur only with the result of the majority's decision today.
NOTES
[1] The assignment states:

[The] Assignor, in consideration of the Assignee's acceptance of this Assignment, and for other good and valuable consideration, hereby grants, assigns, conveys, transfers, and sets over, unto the Assignee, his successors and assigns, all of its assets, except such assets as are exempt by law from levy and sale under an execution, including, but not limited to, all real property, fixtures, goods, stock, inventory, equipment, furniture, furnishings, accounts receivable, bank deposits, cash, promissory notes, cash value and proceeds of insurance policies, claims and demands belonging to the Assignor, wherever such assets may be located, hereinafter the "Estate", as which assets are to the best knowledge and belief of the Assignor, set forth on Schedule "B" annexed hereto.
[2] The complaint alleges, among other things, that the attorneys published the private placement memoranda when they knew or should have known that the documents contained false and misleading information; included a "Use of Proceeds" section in the private placement memoranda indicating that the capital raised would be used to operate and expand MRI's business when the attorneys knew that a substantial amount of the money was being funneled into unsecured loans to Tishman; created a "loan program" under which Tishman could continually borrow substantial sums from MRI; continued participating in the "loan program" when the amounts loaned began reaching "irremediable levels"; and failed to advise or warn disinterested shareholders of the harmful and illegal loans to Tishman and thereby placed third party interests above that of MRI.
[3] A majority of the states that have examined this issue, including Florida, have held that legal malpractice claims are generally not assignable. These include Arizona, see Schroeder v. Hudgins, 142 Ariz. 395, 690 P.2d 114, 118 (Ct.App.1984), abrogation on other grounds recognized by Franko v. Mitchell, 158 Ariz. 391, 762 P.2d 1345, 1353-54 n. 1 (Ct.App.1988); California, see Goodley v. Wank & Wank, Inc., 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976); Colorado, see Roberts v. Holland & Hart, 857 P.2d 492 (Colo.Ct.App.1993); Connecticut, see Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves, 709 F.Supp. 44 (D.Conn.1989); Florida, see KPMG, 765 So.2d at 36; Forgione, 701 So.2d at 557; Illinois, see Brocato v. Prairie State Farmers Ins. Ass'n, 166 Ill.App.3d 986, 117 Ill.Dec. 849, 520 N.E.2d 1200 (1998); Indiana, see Picadilly, Inc. v. Raikos, 582 N.E.2d 338 (Ind.1991); Kansas, see Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson, 250 Kan. 490, 827 P.2d 758 (1992); Kentucky, see Coffey v. Jefferson County Bd. of Educ., 756 S.W.2d 155 (Ky.Ct.App.1988); Michigan, see Joos v. Drillock, 127 Mich.App. 99, 338 N.W.2d 736 (1983); Minnesota, see Wagener v. McDonald, 509 N.W.2d 188 (Minn.Ct.App.1993); Missouri, see Scarlett v. Barnes, 121 B.R. 578 (W.D.Mo.1990); Nebraska, see Earth Sci. Labs., Inc. v. Adkins & Wondra, P.C., 246 Neb. 798, 523 N.W.2d 254 (1994); Nevada, see Chaffee v. Smith, 98 Nev. 222, 645 P.2d 966 (1982); New Jersey, see Alcman Servs. Corp. v. Samuel H. Bullock, P.C., 925 F.Supp. 252 (D.N.J.1996) aff'd, 124 F.3d 185 (3d Cir.1997); Tennessee, see Can Do, Inc. Pension & Profit Sharing Plan v. Manier, Herod, Hollabaugh & Smith, 922 S.W.2d 865 (Tenn.), cert. denied, 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 216 (1996); Texas, see Britton v. Seale, 81 F.3d 602 (5th Cir.1996); and Virginia, see MNC Credit Corp. v. Sickels, 255 Va. 314, 497 S.E.2d 331 (1998).

A minority of jurisdictions allow assignment of legal malpractice claims: the District of Columbia, see Richter v. Analex Corp., 940 F.Supp. 353 (D.D.C.1996); Maine, see Thurston v. Cont'l Cas. Co., 567 A.2d 922 (Me.1989); Massachusetts, see New Hampshire Ins. Co., Inc. v. McCann, 429 Mass. 202, 707 N.E.2d 332 (1999); New York, see Vitale v. City of New York, 183 A.D.2d 502, 583 N.Y.S.2d 445 (N.Y.App.Div.1992); Oregon, see Gregory v. Lovlien, 174 Or.App. 483, 26 P.3d 180 (2001); Pennsylvania, see Hedlund Mfg. Co. v. Weiser, Stapler & Spivak, 517 Pa. 522, 539 A.2d 357 (Pa.1988); and Rhode Island, see Cerberus Partners, L.P. v. Gadsby & Hannah, 728 A.2d 1057 (R.I.1999).
[4] We also approve the district court's holding that the claim in this case is not exempt from forced sale under section 727.104, Florida Statutes (2000), because, as discussed above, the claims in this case do not involve personal services or implicate the confidentiality concerns normally associated with the assignment of legal malpractice claims.