935 So.2d 21 (2006)
MICHAEL E. GREENE, P.A., a Florida professional corporation, and Michael E. Greene, individually, Appellant,
v.
LEASING ASSOCIATES, INC., Appellee.
No. 4D05-1725.
District Court of Appeal of Florida, Fourth District.
May 10, 2006.
Rehearing Denied August 23, 2006.
*22 Michael E. Greene, Coral Springs, for appellant.
James C. Cunningham, Jr. of Berger Singerman, P.A., Miami, for appellee.
GROSS, J.
This case involves a legal malpractice claim filed by a former client, appellee, Leasing Associates, Inc., against its former attorney, appellant, Michael Greene. The malpractice arises from Greene's advice to Leasing Associates to pursue litigation and appeals in federal court, advice that led to the federal court's imposition of monetary sanctions. The malpractice action was initiated according to the terms of a settlement agreement between Leasing Associates and its former adversaries in federal court. We conclude that this agreement is the equivalent of an assignment of the legal malpractice claim. Under Florida law, a legal malpractice claim is not assignable, so that the settlement agreement is void insofar as it pertains to the prosecution of the legal malpractice case. We reverse the judgment in favor of Leasing Associates and remand the case to the trial court "to determine how the parties intend to proceed in the absence of the agreement." Weiss v. Leatherberry, 863 So.2d 368, 369 (Fla. 1st DCA 2003).
The federal case involves two contracts to which U.S. Pool Corporation was a party. The first transaction concerned two vehicle leases, where Leasing Associates leased vehicles to U.S. Pool. In the second transaction, a group of financing companies (the "MHR companies") agreed to provide U.S. Pool with $2.7 million in working capital, through a secured convertible note purchase agreement ("NPA agreement"). Leasing Associates was not a party to the NPA agreement.
U.S. Pool filed bankruptcy. On behalf of Leasing Associates, Greene filed an emergency motion and an adversary complaint in the bankruptcy proceeding. After an evidentiary hearing, the bankruptcy judge denied the motion. Greene advised his client to appeal this ruling to the United States District Court for the Southern District of Florida. The district judge affirmed the bankruptcy judge. On Greene's advice, Leasing Associates appealed the affirmance to the 11th Circuit Court of Appeals; however, the appeal was voluntarily dismissed.
On the adversary complaint, the bankruptcy judge granted a motion for summary judgment against Leasing Associates. The 42 page memorandum decision and order was based on the language of the NPA agreement, which created no third-party beneficiary rights in favor of Leasing Associates and which did not give *23 Leasing Associates secured party status in the U.S. Pool bankruptcy proceeding.
On Greene's advice, Leasing Associates appealed the adverse summary judgment to the district court. The district court affirmed the bankruptcy judge's "excellent and well-reasoned" memorandum decision in all respects and found that Leasing Associates' claims were "without merit."
Again, Greene advised his client to appeal the district court's decision. An appeal was taken and then voluntarily dismissed.
The MHR companies and the law firm for U.S. Pool in the bankruptcy, Berger Singerman, requested the district court impose sanctions against Leasing Associates and Greene pursuant to Federal Rule of Bankruptcy Procedure 8020 or 28 U.S.C. § 1927. They argued that Greene prosecuted a frivolous appeal from the bankruptcy judge's memorandum decision. The district court ruled that "the appeal on this case [was] without merit and frivolous as the Order of the Bankruptcy Court disposed of all issues in [the] litigation." The court held that U.S. Security and Berger Singerman were entitled to recover their attorneys' fees, costs, and damages, with the amount to be determined by the bankruptcy judge.
All parties except for Greene joined in a settlement of the sanctions issue. An attorney who had acted as co-counsel with Greene in the bankruptcy agreed to pay $150,000; Leasing Associates agreed to pay $100,000. After these payments, there was still a deficit of $119,573.61 which the MHR companies and Berger Singerman desired to recover.
As a condition of the settlement, Leasing Associates agreed to pursue a malpractice action against Greene and pay Berger Singerman proceeds from the suit in an amount sufficient to cover five specified categories of legal fees and costs. Only after paying off these five specified claims, was Leasing Associates entitled to any money from a recovery from Greene. Leasing Associates agreed to "cooperate and assist in the prosecution" of the Greene malpractice action, which the settlement agreement described as "the essence of this Agreement ... [that] shall be enforced to assure its performance in its entirety." Leasing Associates agreed to waive the "attorney client" and "attorney work product" privileges "applicable to any and all evidence relevant" to the malpractice action.
The settlement agreement required Leasing Associates to retain Berger Singerman to prosecute the Greene malpractice action. As part of the settlement, the company entered into a retainer agreement/engagement letter with Berger Singerman. The agreement provided that "services will be provided on an hourly basis," and that the law firm would bill Leasing Associates for disbursements and costs. The agreement stipulated that the law firm's "bills for professional fees and costs [the firm] will incur and expend in this representation will be paid only from" the proceeds of the malpractice suit against Greene. If Leasing Associates settled with Greene without the law firm's "written consent," or if it terminated the engagement without the firm's consent, then the company was required to pay the firm the $119,573.61 deficit plus a reasonable hourly rate for the firm's services in the malpractice case, to the extent that such amounts were "not previously paid" out of any settlement proceeds.
After an evidentiary hearing, the bankruptcy judge imposed sanctions against Greene in favor of the MHR companies and Berger Singerman. The judge found that the "testimony supports a finding that LAI, on advice of Mr. Greene, did not do a *24 sufficient investigation of the underlying subordination claim." The district court apparently reduced the amount of sanctions to $10,000, due to Greene's inability to pay. That sanction has been affirmed by the 11th Circuit.
To recover the fees and costs paid to Greene and the amount paid to settle the claims for sanctions, Leasing Associates filed suit in circuit court for, inter alia, legal malpractice against Greene individually After the trial court granted a motion for partial summary judgment against Greene, the court entered a final judgment on the malpractice claim.
Greene argues that the trial court should have dismissed Leasing Associates' malpractice claims because the settlement agreement was tantamount to an assignment that made the MHR companies and Berger Singerman the "actual but unnamed plaintiffs" in the malpractice lawsuit.
The general rule in Florida is that a cause of action for legal malpractice may not be assigned or transferred. See Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So.2d 755, 759-61 (Fla.2005); Kozich v. Shahady, 702 So.2d 1289, 1290 (Fla. 4th DCA 1997); Washington v. Fireman's Fund Ins. Co., 459 So.2d 1148 (Fla. 4th DCA 1984).
This rule is predicated upon the unique relationship between the lawyer and client. An injury resulting from an attorney's negligence in the representation of a client is personal to the client. Consequently, a cause of action arising from the breach of a lawyer's duty to a client can only be asserted by the client.
Weiss, 863 So.2d at 371. The main public policy reason behind the rule is that "the assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty." Kaplan, 902 So.2d at 760 (quoting Goodley v. Wank & Wank, Inc., 62 Cal. App.3d 389, 133 Cal.Rptr. 83, 87 (1976)).
These strong public policy considerations have led to the application of the general rule "even in the absence of a formal assignment of the claim." Weiss, 863 So.2d at 371 (Fla. 1st DCA 2003); see Nat'l Union Fire Ins. Co. v. Salter, 717 So.2d 141 (Fla. 5th DCA 1998) (holding that insurance company could not pursue a legal malpractice claim under the company's right of subrogation).
In Weiss, the adverse parties in a personal injury suit entered into a settlement agreement requiring "[the defendant] to immediately pursue a legal malpractice claim against [the defendant's attorney] and to assign all of the benefits from the lawsuit to the [plaintiff.]" Id. at 370. Before entering into this arrangement, the plaintiff had obtained a judgment against the defendant, which she "agreed that she would not execute" as long as the defendant "diligently pursued the malpractice claim and cooperated with [the plaintiff's attorney] in prosecution of the claim." Id.
The first district held in Weiss that the parties' "agreement [was] the equivalent of an assignment of the malpractice claim." Id. at 369. The plaintiff "traded her right to execute her judgment against" the defendant "for the right to obtain the proceeds" in the malpractice suit against the attorney. Id. at 372. The court found it significant that the defendant, as the nominal plaintiff in the malpractice suit, "had no control over the litigation." Id. "The agreement required him to pursue the case and cooperate with a lawyer selected" by the plaintiff, who was one of the lawyers who represented the plaintiff in the underlying *25 negligence suit and helped to obtain a judgment against the defendant. Id.
In this case, the agreement between Leasing Associates, the MHR companies, and Berger Singerman is analogous to the arrangement in Weiss. The MHR companies and Berger Singerman sought to recover an amount in excess of what they received in settlement from Leasing Associates. Leasing Associates had a malpractice claim against Greene for leading the company down the path to sanctions. The MHR companies and Berger Singerman traded their right to recover additional money from Leasing Associates for the right to recover in the company's malpractice suit against Greene.
Most importantly, the terms of the settlement placed the reins of the malpractice lawsuit in the hands of Berger Singerman, leaving Leasing Associates with little actual control; the company's right to recover money was sixth on a list of prioritized categories and if it settled or dismissed the lawsuit without Berger Singerman's written consent, Leasing Associates was responsible to the law firm for the $119,573.61 deficit, plus the attorney's fees and costs the law firm had incurred in the malpractice suit. Unlike the plaintiff/assignor in Kozich, Leasing Associates was not free "to control the conduct of [the litigation and] to accept or reject any settlement offers." 702 So.2d at 1290. This is a case where Leasing Associates essentially turned its legal malpractice claim over to its former adversary, a situation "generally recognized as the worst excess to be avoided." Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A., 916 So.2d 934, 938 (Fla. 4th DCA 2005).
Having concluded that the agreement between Leasing Associates and Berger Singerman is an unlawful assignment, we agree with the conclusion in Weiss that "the cause of action asserted under the agreement cannot be maintained." 863 So.2d at 373. "The invalidity of the agreement has no effect on the underlying cause of action for legal malpractice, assuming the claim is asserted by" a proper person. Id. We therefore reverse the judgment and remand the case to the trial court for a determination of "whether the action will be dismissed or whether it will be prosecuted independently of the agreement" between Leasing Associates and Berger Singerman. Id.
The parties have discussed numerous legal issues, some of which we will discuss in order to give direction to the case on remand.
Based on this record, we reject Greene's attack on the summary judgment as to liability.[1] Greene is not entitled to the defense of "judgmental immunity." He advocated legal positions that were neither "fairly debatable" nor "unsettled." See Haisfield v. Fleming, Haile & Shaw, P.A., 819 So.2d 182, 185 (Fla. 4th DCA 2002). There was no ambiguity in the pertinent provisions of the NPA. Greene cannot escape responsibility by arguing that Leasing Associates should bear some or all of the blame for the federal court filings. "A client cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise." Tarleton v. Arnstein & Lehr, 719 So.2d 325, 331 (Fla. 4th DCA 1998) (citing Becker v. Port Dock Four, Inc., 90 Or.App. 384, 752 P.2d 1235, 1239 (1988)). *26 Greene cannot avoid liability by blaming his co-counsel for the legal errors in the case; Greene was required to make his own independent evaluation of the legal and factual merits of the rule 60(b) motion and the adversary complaint. See Spaziano v. Price, 763 So.2d 1047, 1049 (Fla. 4th DCA 1999) (rejecting an attorney's argument that he was not negligent because he relied on the advice of another attorney regarding the application of a statute of limitations and stating that an attorney has "a continuing duty to make sure of the current status of the case").
Finally, we find no abuse of discretion in the trial court's granting of a protective order "as to any request which seeks discovery, directly or indirectly, pertaining to fraud in the matter of In re: U.S. Pool Corp."
Reversed and Remanded.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Greene's brief does not contend that the judgment was incorrect as to the amount of damages.