[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16142
_____

D.C. Docket Nos. 1:12-cv-20150-KAM; 10-20941-AJC


In Re: BISCAYNE PARK, LLC,

Debtor.

_____

TERESA CARDENAS,

Plaintiff - Appellant,

versus

MADISON REALTY CAPITAL LP,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 28, 2013)

Before HULL and MARTIN, Circuit Judges, and BOWEN,[*] District Judge.

MARTIN, Circuit Judge:

Madison Realty Capital, LP (Madison) bought substantially all of the assets of Biscayne Park, LLC (Biscayne) as part of a bankruptcy proceeding. Madison argues the Sale Order entered by the Bankruptcy Court included a law suit brought by Biscayne against Wal-Mart before the bankruptcy filing. Teresa Cardenas, the majority shareholder of Biscayne Park, LLC (Biscayne), disputes that the Wal-Mart cause of action was properly a part of the Sale Order. Ms. Cardenas brings this appeal challenging the Bankruptcy Court order affirmed by the District Court, which included the Wal-Mart cause of action as a part of the Sale Order. Upon a careful review of the record, and with the benefit of oral argument, we affirm the rulings of both courts.

I.

In November 2006, Biscayne got a one-year, $8,150,000.00, mortgage with Madison to secure the purchase of a sixteen acre tract. Biscayne hoped to re-sell the property "to a big box retailer (for a sum in excess of twenty million dollars) due to its size and favorable location." To this end, Biscayne and Wal-Mart entered into a purchase agreement in March 2007. Biscayne Park, LLC v. Wal-Mart Stores E., LP, 34 So. 3d 24, 25 (Fla. 3d DCA 2010). However, the purchase

---

[*]Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

2

agreement allowed Wal-Mart to install wells in order to test the groundwater at the site, and after doing so, Wal-Mart backed out of the deal.  Id.

Biscayne then sought and found a new potential buyer, and during negotiations agreed to allow them to test the groundwater using the wells installed by Wal-Mart.  Id.  When Wal-Mart learned of this plan they sought to stop it, because the company "became concerned about its potential liability resulting from this use of the wells that it had previously installed."  Id.  Wal-Mart got a temporary injunction in state court that allowed it to enter the property and seal the wells.  Id. at 26.  The state court also required Wal-Mart to post a $230,000.00 bond.  Id.

Meanwhile, Biscayne remained unable to re-sell the property, and began to have trouble paying back the loan.  On account of its inability to pay off the loans in full, Biscayne paid an extension fee of $41,000 in October 2007, and then another such fee in October 2008.  The 2008 extension fee was nearly three times the amount paid the year before.  After Biscayne's failure to make certain tax payments and an installment due in May 2009, Madison began foreclosure proceedings in Miami-Dade County Circuit Court.  In April 2010, Biscayne filed a voluntary petition for relief under Chapter 11 of the Bankruptcy code.

Between the beginning of the foreclosure proceedings and the filing of the bankruptcy petition, a Florida appellate court reversed and remanded the decision

granting Wal-Mart the injunction that permitted the sealing of the wells.  Id. at 27.
In setting aside the injunction, the Florida appeals court said "because the wells on Biscayne's property were destroyed following the entry of an improper injunction, on remand Biscayne can proceed against Wal-Mart's posted bond on its claim for damages."  Id. (citations omitted).  After this ruling of the Florida appeals court, and pursuant to Federal Rule of Bankruptcy Procedure 9027, Biscayne filed a Notice of Removal, bringing the Wal-Mart action into the Bankruptcy Court.  The removed case consisted of three counts brought by Biscayne in a counterclaim to Wal-Mart's complaint:  (1) Declaratory Judgment; (2) Conversion; and (3) Trespass.  The Notice of Removal stated in part:  "Upon removal of the claim or cause of action this proceeding is core; or, if non-core, [Biscayne] consents to entry of final orders or judgment by the bankruptcy judge."

Then in August 2010, the Bankruptcy Court entered a Cash Collateral Order, granting Madison a first priority lien on "[a]ll of the real and personal property of [Biscayne] of any description whatsoever, wherever located and whenever arising or acquired."  Biscayne did not object to the Cash Collateral Order.  In October 2010, the Bankruptcy Court entered a Bid Procedures Order, and again, Biscayne did not object.  The Bid Procedures Order set certain procedures for the sale of "substantially all of the assets of" Biscayne.

After a hearing, the Bankruptcy Court found Madison's bid was the highest and best, and entered a Sale Order for assets described in exhibits to that Order. These included "[a]ll causes of actions and judgments pursuant thereto relating to the Premises," "[a]ll contract rights, causes of actions, claims, [and] demands of [Biscayne]," and "the right, in the name and on behalf of [Biscayne] to appear in and defend any action or proceeding brought with respect to the Premises."  In addition to listing what was included, the Sale Order also noted what was not, expressly excluding "the $230,000 supersedeas bond posted by Wal-Mart in Miami-Dade County Circuit Court under Case Number 08-67361 CA 22."  Again, Biscayne offered no objection to this Order.  As part of the Sale Order, the Bankruptcy Court retained jurisdiction "for the purpose of:  (1) determining the validity, enforceability, or priority of any 'Claim' (as that term is defined in the Sale Order); (2) enforcing the Sale Order; and (3) determining any disputes under . . . the Sale Order."

After the sale, Madison filed a motion in the Bankruptcy Court seeking a ruling that the "Adversary Proceeding," namely the counterclaim by Biscayne against Wal-Mart, "was included in the sale of [Biscayne]'s assets to Madison." At a hearing on this motion, Ms. Cardenas argued that the Sale Order did not transfer the Wal-Mart cause of action because the Sale Order's "causes of action" language "doesn't talk about tort claims. . . .  If you read this, all causes of action

relating to the premises, does not necessarily sell a tort cause of action against Wal-Mart that's independent of the land itself."

## II.

Ms. Cardenas moved to dismiss the bankruptcy. In her motion to dismiss, Ms. Cardenas argued that the Wal-Mart cause of action "has been included in the 'sale of assets' in a confusing manner which was not in fact intended or understood by the shareholders of [Biscayne]."

On October 7, 2011, the Bankruptcy Court issued the order that is the subject of this appeal. The Bankruptcy Court found that "Madison had a lien on the Wal-Mart Cause Of Action under both the Cash Collateral Order and the Prepetition Loan Documents, and purchased the Wal-Mart Cause Of Action via its credit bid on that Collateral at the Sale Hearing and pursuant to the Sale Order." The Bankruptcy Court also granted the motion to dismiss the bankruptcy and dismissed the case with prejudice.

Ms. Cardenas appealed the Bankruptcy Court's Order to the U.S. District Court for the Southern District of Florida. After the case was fully briefed in the District Court, Biscayne filed a Motion to Join in the Appeal and to Adopt the Briefs of the Appellant, which the District Court granted the following day. Ultimately the District Court affirmed the Bankruptcy Court's Order, rejecting four arguments raised by Ms. Cardenas.

First, the District Court determined that the Wal-Mart action was included in the Sale Order even if not explicitly referenced by adversary number because "[t]he Sale of Assets explicitly provided that 'All contract rights, causes of action, claims, [and] demands of [Biscayne]' were included in the sale from [Biscayne] to [Madison]." Second, the District Court found that "the Bankruptcy Court correctly distinguished the bond from causes of action associated with it." Third, the District Court rejected the notion that the Bankruptcy Court should have held an evidentiary hearing on whether the Sale Order included the Wal-Mart cause of action. Fourth, the District Court found that Ms. Cardenas had waived her argument that the Wal-Mart cause of action could not be assigned as a matter of law "since that issue was never argued before the Bankruptcy Court." The District Court acknowledged that Ms. Cardenas argued at the Bankruptcy Court that the sale of assets only allowed for contract causes of action, and not tort causes of action. "But [Ms. Cardenas] never argued before the Bankruptcy Court that tort causes of action are unassignable as a matter of law." Her appeal to this Court followed.

As in the District Court, Ms. Cardenas, not Biscayne, originally filed the appeal to this Court. And similar to what happened in the District Court, after Ms. Cardenas filed her brief in this Court, Biscayne filed a Motion to Join in the

Appeal and to Adopt the Briefs of the Appellant.  Initially, this Court denied

Biscayne's motion, but later vacated that decision and granted the motion to join.[1]

III.

For bankruptcy cases, this Court functions as a second court of review, and

thus independently examines the factual and legal determinations made by the

Bankruptcy Court and employs the same standards of review as the District Court.

In re Optical Technologies, Inc., 425 F.3d 1294, 1299–300 (11th Cir. 2005).

Generally we review legal the conclusions of the Bankruptcy Court and District

Court de novo, and review findings of fact for clear error.  Id.  When reviewing a

Bankruptcy Court's interpretation of the effect of its own order, this Court will

defer to that interpretation unless the Bankruptcy Court clearly abused its

discretion.  Id.

A.

Ms. Cardenas raises two issues in this appeal.  First, she argues that the bond

and cause of action are inextricably linked, and thus the Bankruptcy Court and

District Court erred in finding that the cause of action was included in the Sale

Order when the bond was explicitly excluded.  Second, she argues that the District

---

[1] The briefs for appellant that we consider were filed by Ms. Cardenas.  Thus, despite Biscayne's joining of the appeal, we refer to the arguments as hers.  Also, because Biscayne has now joined the appeal, Madison's standing argument, raised in its opposition brief before we reached our final decision, is moot.

Court erred in finding that she waived her argument that because the Wal-Mart cause of action sounds in tort it could not be transferred as a matter of Florida law.

The plain meaning of the Sale Order's language governs its interpretation. Belize Telecom, Ltd. v. Belize, 528 F.3d 1298, 1307 (11th Cir. 2008).  When language used is unambiguous, this Court gives that language the meaning it clearly expresses.  See Storfer v. Guarantee Trust Life Ins. Co., 666 F.3d 1277, 1279 (11th Cir. 2012) (per curiam).  This Court "may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions." Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1290 (11th Cir. 2004). Therefore, a post-hoc statement of what a party intended cannot trump an agreement that is sufficiently clear on its face.  See Ellinger v. United States, 470 F.3d 1325, 1338 (11th Cir. 2006).

In this case, Biscayne and Madison both agreed, without objection, to the Sale Order.  That Sale Order stated, in part, that Madison bought "[a]ll contract rights, causes of action, claims, [and] demands of" Biscayne.  There can be no genuine dispute that the surviving Wal-Mart suit is a "claim" or "cause of action": Biscayne identified it as such in its notice of removal.  Whether the Wal-Mart cause of action is included as one of the actions also leaves no genuine dispute:  all means "without exception."  Thus, the conclusion that the Sale Order included the Wal-Mart cause of action hardly requires the "legal gymnastics" that Ms. Cardenas

9

suggests are necessary.  And Ms. Cardenas's claims that she and others "believed" they were keeping the cause of action, or that it was never Biscayne's "intent . . . to sell its cause of action," are not legally sufficient.  See Ellinger, 470 F.3d at 1338. Because we conclude that the Sale Order included the Wal-Mart cause of action, Ms. Cardenas has not demonstrated any abuse of discretion by the Bankruptcy Court or District Court on this point.  See In re Optical Technologies, 425 F.3d at 1299–300.

The fact that the Wal-Mart bond, as opposed to the cause of action, was carved out of the Sale Order also supports our conclusion.  By expressly excluding the bond, as well as a specific trailer home, the parties indicated that they knew how to carve something out of the Sale Order.  The cause of action was not excluded from the Sale Order.  Other items were.  Thus, the logical presumption, especially in the context of the broad "all . . . causes of action" language in the Sale Order, is that the cause of action was part of the Sale Order.  See In re Celotex Corp., 487 F.3d 1320, 1334 (11th Cir. 2007) ("[W]hen certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded." (internal quotation mark omitted)).

This Court finds no legal support for Ms. Cardenas's argument that "[t]here is no distinction, in the context of this case, between the Bond and the claim on the Bond."  She states: "Simply put, the Bond and the claim against Wal-Mart are

10

legally inseparable." This claim is not supported by any citation to a statute or case. She states: "Legally, the Bond and a claim on the Bond, from the Debtor's prospective [sic] are inseparable." Again, this claim is not supported by any citation to a statute or case.[2] The only case Ms. Cardenas cites for support on this point is In re Maxko Petroleum, LLC, 425 B.R. 852, 876 (Bankr. S.D. Fla. 2010); after citing the case, she states in parentheses: "Buyer beware prevails at bankruptcy court auctions." It appears that Ms. Cardenas is referring to the statement from In re Maxko that "[t]he successful bidder at a bankruptcy sale is bound by the offer as stated and embodied in an approval order." Id. at 875–76. But on this point, there is no argument. The Sale Order included the cause of action, and Madison, Biscayne, and Ms. Cardenas are all bound by that language.[3]

B.

Ms. Cardenas's waiver argument contains two parts. First, she argues that she properly presented the issue regarding the assignability of tort causes of action under Florida law, and thus the determination by the District Court that she waived the issue is error. Second, she argues that the waiver doctrine should not apply because substantial justice is at stake, the proper resolution is beyond any doubt,

---

[2] Ms. Cardenas's reply brief suffers from a similar deficiency. The "Severability Issue" section cites no statute or case.
[3] By the same token, the Sale Order did not cover the Bond contract, and we express no opinion about potential rights, if any, under the bond.

11

and her waiver issue presents significant questions of general impact and great public concern.

To support her argument that she properly raised the tort assignment issue, Ms. Cardenas cites to the following oral representation by her counsel at a bankruptcy hearing:

> You don't get a security interest in a tort cause of action. That's why it is[] limited to contract causes of action. They didn't have a lien on it. They are not entitled to a lien on it. We can brief this issue or we can have evidence on this issue. Because the ---

The bankruptcy Judge then interjected and stated he did not find evidence to be necessary, but invited the parties to "prepare proposed orders . . . in order to put this up for an analysis and determination." Ms. Cardenas does not point to anything else in the Bankruptcy Court record regarding the assignability of tort claims under Florida law aside from this one comment, and this Court found none.

This one comment was insufficient to preserve the issue as a matter of law. "Ordinarily an appellate court does not give consideration to issues not raised below." In re Lett, 632 F.3d 1216, 1226 (11th Cir. 2011) (quoting Hormel v. Helvering, 312 U.S. 552, 556, 61 S. Ct. 719, 721 (1941)). This is particularly true in the bankruptcy context, "as bankruptcy cases are to be tried in bankruptcy court." Id. (quotation marks and alteration omitted). Here, one comment that does not clearly raise the issue was insufficient to preserve the issue on appeal.

12

Ms. Cardenas argues that she should not have to "state[] verbatim below" the argument she now makes about transferability in order to preserve it. But neither the District Court, nor this Court, has ever suggested there is any such requirement. Instead the requirement, not met here by Ms. Cardenas, is that the issue must be clearly raised in the first place. As this Court has stated before, "[w]e cannot allow [a party] to argue a different case from the case she presented to the district court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation mark omitted). Nor, for that matter, can this Court allow a party to argue a different case from the case she presented to the Bankruptcy Court.

Where a party does not raise an issue below, this Court evaluates it under the plain error rule. The plain error rule allows consideration of an issue not raised in the District Court (1) if it involves a pure question of law, and if refusal to consider it would result in a clear miscarriage of justice; (2) where the appellant raises an objection to an order which he had no opportunity to raise at the District Court level; (3) where the interest of substantial justice is at stake; (4) where the proper resolution is beyond any doubt; or (5) if the issue presents significant questions of general impact or of great public concern. In re Lett, 632 F.3d at 1227 n.22

13

(citations omitted).  As detailed below, however, Ms. Cardenas's arguments reviewed under the plain error standard do not prevail.[4]

First, the Bankruptcy Court found the Wal-Mart cause of action to be a contract claim, stating it "involves an alleged breach of contract and so could certainly be described as a 'contract cause of action.'"  And Ms. Cardenas failed to respond to Madison's argument that this is a mixed question of law and fact insofar as this Court would not simply have to decide the transferability of a tort claim under Florida law, but whether the claim is a tort action at all.  In any event, allowing Ms. Cardenas's waiver of this issue to stand would not result in a miscarriage of justice.  A miscarriage of justice requires "a decision or outcome of a legal proceeding that is prejudicial or inconsistent with the <u>substantial rights</u> of a party."  <u>In re Lett</u>, 632 F.3d at 1224 (emphasis added) (quotation marks and alterations omitted).  Here, Ms. Cardenas only offers speculation about how the Bankruptcy Court's order prejudices her pecuniary interests.

By the same reasoning, it does not appear that under these facts substantial justice is at stake.  Ms. Cardenas argues that substantial justice "certainly is at stake" because Madison is "already overpaid."  But this Court has generally limited the substantial justice exception to "the vindication of fundamental

---

[4] Ms. Cardenas only notes four of the five scenarios in her brief, omitting the scenario in which a party may prevail if they raise an objection to an Order that they could not raise below.  As discussed above, Ms. Cardenas had an opportunity to raise her objection below, so even if she had addressed this scenario in her discussion of waiver, it would have been rejected for the reasons already discussed.

constitutional rights." See In re Daikin Miami Overseas, Inc., 868 F.2d 1201, 1207 (11th Cir. 1989). Ms. Cardenas's argument that Madison is overpaid does not raise an issue of fundamental constitutional rights.

Neither is it clear that the resolution of this issue is beyond any doubt. Although Ms. Cardenas argues that "[t]ort claims cannot be assigned under Florida law," the two cases she cites reach a more limited conclusion. The court in Notarian v. Plantation AMC Jeep, Inc., 567 So. 2d 1034, 1035 (Fla. 4th DCA 1990) found only that "personal injury claims," in that case intentional infliction of emotional distress, are not assignable. And while the court in Florida Patient's Compensation Fund v. St. Paul Fire & Marine Insurance Co., 535 So. 2d 335, 338 (Fla. 4th DCA 1988), did find "personal injury and malpractice claims are not assignable," even that conclusion has been altered by a later case, Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So. 2d 755, 757 (Fla. 2005), which "recede[d] from the broad dicta . . . purporting to prohibit the assignment of all legal malpractice claims." See also Wachovia Ins. Servs., Inc. v. Toomey, 994 So. 2d 980, 987 (Fla. 2008) (finding an insured's breach of fiduciary duty claim against an insurance broker may be assigned). Based on this Court's review of the relevant caselaw, we reject the notion that the resolution is "beyond any doubt."

Lastly, this case does not involve a significant question of general impact or of great public concern. This exception is generally reserved for cases regarding a

policy with national application.  See Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360–61 (11th Cir. 1984) (finding the exception appropriate in a case involving a national policy of denying Cuban nationals access to money to finance violent acts abroad).  In contrast, this case turns on specific language in a Sale Order between two private parties.  It is the type of case we have found inappropriate for this exception.  See, e.g., Access Now, 385 F.3d at 1334–35 (declining to find the exception appropriate "because our ruling would necessarily be based on facts specific" to the case); see also Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co., 215 F.3d 1217, 1224 (11th Cir. 2000) (stating that even "matters of great moment" should first be presented to the District Court).

## IV.

For these reasons, the rulings of the District Court and Bankruptcy Court are **AFFIRMED**.

16