**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Daniel N. MARTIN, Ronald R. Richmond, Stephen C. Booth, J. Harris Cook, Gerald A. Figurski, and Sharon Taylor, et al., Defendants.**

**No. 90–409–CIV–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

July 26, 1991.

Henry A. Stein, Rudnick & Wolfe, Tampa, Fla., for plaintiff.

Lora A. Dunlap, Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, Fla., for defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court upon Defendants' Motion for Summary Judgment. The Court, after consideration of the motion, the brief in support of the motion, the response, and cases related thereto, finds that this motion should be denied.

### STATEMENT OF FACTS

The Federal Savings and Loan Insurance Corporation (the "FSLIC") was appointed as receiver for Liberty Savings and Loan Association ("Liberty") on May 15, 1987, after the Comptroller of the State of Florida determined that Liberty was insolvent. Chapter 665.097, Florida Statutes, required the FSLIC's appointment as receiver for Liberty since a portion of Liberty's deposits were insured through the FSLIC.

The FSLIC, pursuant to 12 U.S.C. § 1729 and 12 C.F.R. § 569a.6(c)(1), entered into a purchase and assumption transaction[1] ("P & A") transferring virtually all of Liberty's

---

1. A "purchase and assumption transaction" is one of two alternatives the Federal Deposit Insurance Corporation ("FDIC") may pursue in determining the future course of a failed bank. The FDIC may pursue a "deposit payoff" where the bank is closed and depositors are paid up to the $100,000 per account limit from the deposit insurance fund. (See 12 U.S.C. § 1821(d) (1982)). A deposit payoff is commonly referred to as a liquidation. The other alternative which the FDIC chose in the case of Liberty is a "purchase and assumption transaction". The FDIC arranges for the sale of the assets and the deposit liabilities of the failed bank to another bank which is solvent. The solvent bank reopens the failed bank in the solvent bank's name and banking service is uninterrupted. (See 12 U.S.C. § 1823(c)(2), (c)(4)(A) (1982)) *Federal Deposit Insurance Corporation v. Jenkins,* 888 F.2d 1537, 1537–38 (11th Cir.1989).

assets and liabilities to Liberty Federal Savings and Loan Association ("Liberty Federal"), a newly created federal mutual savings association. As part of the scheme to rescue Liberty, certain assets, including claims that Liberty may have against third-party professionals, and directors and officers were transferred by the FSLIC in its receivership capacity to the FSLIC in its corporate capacity, pursuant to the authority of 12 U.S.C. § 1729(f)(2)(A) (Repealed August 9, 1989), which provides that:

> In order to facilitate a merger or consolidation of an insured institution described in subparagraph (B) with another insured institution or the sale of assets of such insured institution and the assumption of such insured institution's liabilities by another insured institution, the corporation is authorized, in its sole discretion and upon such terms and conditions as the Corporation may prescribe
>
> (i) to purchase any such assets or assume any such liabilities....

12 C.F.R. § 569a.6(c)(1) also authorized the acquisition of Liberty's assets. 12 C.F.R. § 569a.6(c)(1) provides:

> The Receiver shall have the power to:
> (i) Sell for cash or on terms, exchange, or otherwise dispose of, in whole or in part, any or all of the assets and property of the institution, real, personal and mixed, tangible and intangible, of any nature, including any mortgage, deed of trust, chose in action, bond, note, contract, judgment, or decree, share or certificate of share of stock or debt, owing to such institution or the Receiver.

On August 9, 1989, the FSLIC was abolished by the Congressional enactment of FIRREA by which all assets held by the FSLIC–Corporate were assigned to the FDIC as the manager of the FSLIC Resolution Fund (the "Fund"). The FDIC, as manager of the Fund, now owns the assets and the property of the institution, pursuant to 12 U.S.C. § 1821a(a)(1).

The FDIC initiated this litigation against Defendants on April 3, 1990. The Complaint alleges that Defendants acted negligently in their legal representation of Liberty, breached their fiduciary duties owed to Liberty, and engaged in legal malpractice.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court finds that Defendants as moving parties are not entitled to summary judgment as a matter of law.

## ATTORNEY/CLIENT RELATIONSHIP

■ Defendants assert that legal malpractice claims are not assignable due to the nature of the attorney/client relationship. Defendants have provided the Court with an eloquent history of the "unique and centuries old attorney/client relationship". (Defendants Brief, p. 22, n. 15). However, it is not persuasive. The "sacred" nature of the attorney/client relationship will not be undermined by the ability of the FDIC to bring an action of legal malpractice acquired in a P & A transaction.

## FEDERAL STATUTORY AUTHORIZATION

■ Defendants assert that the authorization to pursue an assigned legal malpractice claim is absent from the express powers and rights granted to the FDIC by the Act of Congress while all other types of claims the FDIC could pursue are addressed in the Act in minute detail. Defendants contend that whether legal malpractice claims are assignable to the FDIC in its receivership capacity is a question for Congress, not this Court.

Defendants state in their brief:

> "Even more telling is in one of the few situations where the issue of actions against attorneys or the priority of claims against attorneys was even addressed by Congress the provision was receded from the Senate Conferees prior

to the enactment of the Legislation." (Defendants' Brief, p. 16)

(*Federal Deposit Insurance Corporation v. Jenkins*, 888 F.2d 1537, 1538 n. 1 (11th Cir.1989)). Defendants correctly observe that Congress considered whether the FDIC would have priority to bring "claims against directors, officers, attorneys, and other third party agents of a failed savings institution over shareholders, depositors and creditors". *Id.* But, Defendants incorrectly argue that the Senate denied the FDIC power to bring such claims. The fact that the Senate considered the issue of priority to bring claims clearly indicates that Congress intended that the FDIC bring such claims.

In *Jenkins*, the issue before the Court was whether the FDIC had priority over the shareholders of a failed bank to bring claims against solvent third parties. *Jenkins* at 1539. This case held that the FDIC does not have priority over bank shareholders to bring actions against third party agents. *Id.* at 1541. Such a holding would not be possible, however, without implicitly affirming congressional intent to authorize the FDIC to bring such claims for legal malpractice. Defendants' contention that this case denies the FDIC power to bring legal malpractice claims is incorrect.

12 U.S.C. § 1729(f)(2)(A) (Repealed August 9, 1989), provides that:

In order to facilitate a merger or consolidation of an insured institution described in subparagraph (B) with another insured institution or the sale of assets of such insured institution and the assumption of such insured institution's liabilities by another insured institution, the corporation is authorized, in its sole discretion and upon such terms and conditions as the Corporation may prescribe

(i) to purchase **any such assets** or assume any such liabilities....

Even though 12 U.S.C. § 1729 has been repealed, assignments are still authorized by 12 U.S.C. §§ 1821 through 1823, as amended. 12 U.S.C. § 1823(c)(2)(A) (1988), provides:

In order to facilitate a merger or consolidation of an insured bank ... with an insured institution or the sale of assets of such insured bank and the assumption of such insured bank's liabilities by an insured institution, or the acquisition of the stock of such insured bank, the Corporation is authorized, in its sole discretion and upon such terms and conditions as the Board of Directors may prescribe

(i) to purchase **any such assets** or assume any such liabilities ...

12 U.S.C. § 1823(c)(2)(A) (1988) "clearly gives FDIC/Corporation the authority to purchase 'any assets' of a failed bank in order to facilitate the purchase of a failed bank by an assuming bank. The language of the statute is *not* limited any *transferrable* assets. Thus, we hold that § 1821(c)(2)(A) creates a power in FDIC/Corporation to purchase any assets, including assets nontransferable under state law, from FDIC/Receiver in order to facilitate a P & A transaction." *FDIC v. Bank of Boulder*, 911 F.2d 1466, 1472–73 (10th Cir.1990).

12 C.F.R. § 569a.6(c)(1) provides:

The Receiver shall have the power to:

(i) Sell for cash or on terms, exchange, or otherwise dispose of, in whole or in part, **any or all of the assets and property of the institution,** real, personal and mixed, tangible and intangible, of any nature, including any mortgage, deed of trust, **chose in action,** bond, note, contract, judgment, or decree, share or certificate of share of stock or debt, owing to such institution or the Receiver.

The Court holds that 12 U.S.C. § 1729(f)(2)(A) and 12 C.F.R. § 569a.6(c)(1) provide express authorization for the FDIC to purchase, transfer or assign **any asset** of a failed institution, including legal malpractice claims.

## PREEMPTION OF STATE LAW

■ The Court recognizes the general rule that legal malpractice claims are not assignable in Florida. Defendants cite the strong presumption in favor of applying the law of the state in which the Court sits. Florida law will control the assignability of legal malpractice claims unless there is ex-

press authorization to the contrary found in a federal statute, treaty, or the Constitution. 28 U.S.C. Section 1652 (1991).

But, "[e]ven where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law". *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). State law is preempted when it poses an "obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

In this case, Florida law is an unacceptable obstacle to the operation of the FDIC. In *Jenkins,* the Eleventh Circuit stated:

> A purchase and assumption transaction is considered more desirable that a liquidation for several reasons; including that a bank closing deteriorates public confidence in the banking system, that closing a bank disrupts the operation of other solvent banks, that a liquidation may force depositors to wait for months to recover the insured portion of their funds, and that uninsured portions may never be recovered.

*Jenkins,* at 1540 (citing *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.1982)). P & A's depend upon the free transfer of assets for their existence. (Plaintiff's Brief, p. 5). To impose state law on the FDIC would require the FDIC to evaluate the transferability of each asset of a failed bank under state law before a P & A transaction could be executed. The prohibitive expense and the delay incurred in evaluating the transferability of each asset under state law would render the P & A ineffective as all of the desirable attributes of a P & A transaction noted by the Eleventh Circuit in *Jenkins* would vanish.

The Court holds that federal statutory law preempts contradictory state law and allows nontransferable claims for legal malpractice to be transferred to the FDIC

in the course of bank rescue operations, including a P & A transaction. Therefore, the FDIC, as the receiver of the failed bank, has the authorization to bring the legal malpractice claims against Defendants. Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment be DENIED.

DONE and ORDERED.