In re Bruce Lee JENNINGS, Debtor.

Brandon J. Maxfield, individually and on behalf of the Estate of Bruce Lee Jennings, Plaintiff,

v.

Quarles & Brady LLP, Quarles & Brady LLP d/b/a Quarles & Brady Streich Lang LLP, and Ned R. Nashban, Defendant.

Bankruptcy No. 03–4926–3F7.
Adversary No. 06–84.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 26, 2006.

---

Gregory A. Anderson, E. Holland Brabham, Anderson Glenn, LLC, Ponte Vedra Beach, FL, Gregory K. Crews, Richard R. Thames, Stutsman Thames & Markey, P.A., Jacksonville, FL, for Plaintiff.

John A. DeVault, III, Allan F. Brooke, II, R.H. Farnell, II, Bedell Dittmar DeVault Pillans & Coxe PA, Jacksonville, FL, Daniel B. Rosenthal, Quarles & Brady, LLP, Boca Raton, FL, John J. Dawson, Benjamin R. Norris, Quarles & Brady Streich Lang LLP, Phoenix, AZ, for Defendant.

## ORDER ON MOTION TO SUBSTITUTE PARTY PLAINTIFF

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Substi-

tute Party Plaintiff filed by the Plaintiff, Brandon J. Maxfield, and by Gregory K. Crews, the Trustee of the Chapter 7 Estate of Bruce Lee Jennings.

Brandon J. Maxfield (Maxfield) commenced this action by filing a Complaint against the Defendants for legal malpractice and breach of fiduciary duty. The issue before the Court is whether the Chapter 7 Trustee should be substituted for Maxfield as the Plaintiff in the action.

## Background

The Debtor, Bruce Lee Jennings (Jennings), filed a petition under Chapter 11 of the Bankruptcy Code on May 14, 2003. On the same day, ten entities that were related to Jennings also filed Chapter 11 petitions.

Quarles & Brady, LLP and Ned Nashban, Esquire (the Defendants) were the attorneys of record for all of the related debtors at the time that the petitions were filed.

Maxfield is the primary creditor of Jennings' bankruptcy estate. Specifically, Maxfield is the holder of a prepetition judgment against Jennings in an amount that exceeds $24,000,000.

On February 25, 2004, Maxfield filed a Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer. (Main Case Doc. 423). In the Motion, Maxfield primarily alleged that the Defendants represented adverse interests within the multiple bankruptcy estates, and that the Defendants had failed to properly disclose such conflicts of interest in the bankruptcy cases.

On November 16, 2004, the Court entered an Order Granting Maxfield's Motion to Disqualify Debtors' Counsel and for Disgorgement. (Main Case Doc. 890). The Order provided, among other determinations, that "Quarles & Brady LLP is terminated from further representation of any of the Debtors in these cases." The Court also issued separate Findings of Fact and Conclusions of Law, and found that the Defendants' conduct in the cases warranted a complete denial of compensation and disgorgement of any prepetition retainer. (Main Case Doc. 889, p. 13).

On December 29, 2004, Maxfield filed a Renewed Motion for Leave to Pursue Designated Claims on Behalf of the Estate. (Main Case Doc. 946). In the Motion, Maxfield alleged that the Defendants had "committed legal malpractice in not protecting the interests of Bruce Jennings' estate," and further alleged that no other parties were available to pursue the malpractice claims against the Defendants. As Jennings' largest creditor, therefore, Maxfield requested authorization from the Court to prosecute the malpractice claims for the benefit of Jennings' bankruptcy estate.

On March 24, 2005, the Court entered an Order Authorizing Brandon J. Maxfield to Pursue Malpractice Claims on Behalf of the Estate of Bruce Lee Jennings, Debtor. (Main Case Doc. 1145). The Order provides:

> Upon the evidence presented, the Court finds there may be colorable claims against Quarles & Brady relating to (i) the estate's security interests in the assets of B.L. Jennings, Inc. and (ii) certain claims against RKB Investments. Although Mr. Jennings himself has not technically refused to pursue the malpractice claims, the Court finds that there may be certain inherent conflicts of interest in Mr. Jennings pursuing the malpractice claims himself. The Court further finds that there is no effective remedy for creditors or the estate if Mr. Jennings failed to pursue the claims in a timely or diligent fashion. The Court therefore finds that Mr. Jennings should not be the person charged with the task of pursuing the claims against Quarles &

Brady. There is no creditor's committee in this case, nor has any Chapter 11 trustee been appointed. The Court has also not yet determined whether conversion of the case to Chapter 7 would be appropriate. It further appears to the Court that the statute of limitations for pursuing claims against Quarles & Brady may expire on May 14, 2005, which is less than two months away. Brandon James Maxfield holds a $24 million judgment against Mr. Jennings and is by far the largest creditor of Mr. Jennings' estate. Mr. Maxfield is the logical party to pursue the claims since he will be the principal beneficiary of any recovery on the claims. The Court thus finds that it is appropriate that Mr. Maxfield be permitted to pursue any and all claims against Quarles & Brady on behalf of Bruce Lee Jennings' estate.

(Main Case Doc. 1145, pp. 1–2). Accordingly, the Court granted the motion for leave to pursue claims on behalf of the estate, and authorized Maxfield to pursue any claims that the bankruptcy estate of Bruce Lee Jennings held against Quarles & Brady as a result of Quarles & Brady's representation of Jennings.

On May 13, 2005, Maxfield filed a Complaint against the Defendants for legal malpractice and breach of fiduciary duty. (Adv.Doc. 6).

Less than one month later, on June 7, 2005, the Court entered an Order Converting Case to Chapter 7. (Main Case Doc. 1268). The Order included a Notice that the United States Trustee had appointed Gregory K. Crews (Crews) as the Chapter 7 Trustee.

Maxfield subsequently filed the Motion to Substitute Party Plaintiff that is currently before the Court. (Adv.Doc. 41). In the Motion, Maxfield requests that the Court enter an order substituting Crews, the Chapter 7 Trustee, as the Plaintiff in this action.

The Defendants filed a written Opposition to the Motion. (Adv.Doc. 44). In their Opposition, the Defendants assert that Maxfield was not their client and therefore never had standing to file the malpractice action. Since Maxfield never had standing, the Defendants assert, he may not substitute Crews as the real party in interest.

### Discussion

The Complaint filed by Maxfield against the Defendants contains two counts: a claim for damages based on the Defendants' alleged legal malpractice, and a claim for damages based on the Defendants' alleged breach of fiduciary duty. Both claims arise from the Defendants' representation of Jennings' estate in the bankruptcy case that was filed in the Middle District of Florida. (Adv.Doc. 6).

Jennings' bankruptcy case was initially filed as a chapter 11 case, and was pending as a chapter 11 case at the time that the malpractice action was commenced.

### A. General principles

■ It is clear that the malpractice claims asserted by Maxfield are property of the bankruptcy estate. "Claims of malpractice and fraud that arise during the performance of services for a debtor or a debtor in possession in a chapter 11 proceeding are property of the bankruptcy estate." *In re Robotic Vision Systems. Inc.,* 343 B.R. 393, 398 (Bankr.D.N.H.2006)(citing *Bezanson v. Thomas,* 402 F.3d 257, 265 (1st Cir.2005) and *Correll v. Equifax Check Servs., Inc.,* 234 B.R. 8, 11 (D.Conn.1997)).

**1. As a general rule, the trustee is the representative of the estate with the authority to pursue claims on its behalf.**

Generally, the Bankruptcy Code provides that causes of action belonging to the

estate may be asserted by the bankruptcy trustee or a Chapter 11 debtor-in-possession. The Bankruptcy Code "vests authority to sue on behalf of the bankruptcy estate in the trustee, or, in a Chapter 11 case in which no trustee is appointed, the debtor-in-possession." *In re iPCS, Inc.,* 297 B.R. 283, 288 (Bankr.N.D.Ga.2003).

Section 323 of the Bankruptcy Code, for example, provides that the trustee in a bankruptcy case is the representative of the estate and has the capacity to sue and be sued. 11 U.S.C. § 323. Section 1107 of the Bankruptcy Code provides that a chapter 11 debtor-in-possession has the rights and powers of a trustee serving in the case. 11 U.S.C. § 1107.

**2. As an exception to the general rule, § 1123 permits Courts to confirm plans that appoint entities other than the trustee to pursue a claim on behalf of the estate.**

As a statutory exception to the general rule that the trustee is the representative of a bankruptcy estate, § 1123 of the Bankruptcy Code permits Chapter 11 debtors to propose plans that provide for an entity other than the trustee to retain and enforce a claim held by the estate. The section provides in part:

**11 USC § 1123. Contents of plan**

. . .

(b) Subject to subsection (a) of this section, a plan may—

. . .

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, *or by a representative of the estate appointed for*

*such purpose,* of any such claim or interest.

11 U.S.C. § 1123(b)(3) (Emphasis supplied).

In *In re Transit Group, Inc.,* 332 B.R. 45, 54 (Bankr.M.D.Fla.2005), the Court found that a "Creditor Agent" appointed pursuant to a confirmed chapter 11 plan had derivative standing to pursue an action to avoid a transfer made by the debtor.

In order to assert the avoidance claims against the defendant, the plaintiff need only establish that: (1) he has been appointed, and (2) he is a representative of the estate. (Citations omitted.) "The first element requires that the court approve the appointed party, as for example, through plan confirmation." *Pardo,* 264 B.R. at 353 (*citing Sweetwater,* 884 F.2d at 1326). "The second element generally requires a court to decide 'whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors.'" *Id.* (*citing* 884 F.2d at 1327).

*In re Transit Group, Inc.,* 332 B.R. at 53. The Court concluded that the Creditor Agent satisfied the two requirements for assertion of the claim, and therefore possessed derivative standing to bring the avoidance action.

In reaching its decision, the Court in *Transit Group* relied in part on a decision by the Eleventh Circuit Court of Appeals in *In re Chase & Sanborn Corporation,* 813 F.2d 1177 (11th Cir.1987). In that case, the Eleventh Circuit upheld the lower courts' decision that a "creditor trustee" designated in a confirmed plan had standing to pursue a fraudulent transfer claim, even though he was neither a trustee in bankruptcy nor the debtor-in-possession. In its analysis, the Eleventh Circuit noted that the Bankruptcy Court had concluded that "the creditor trustee was the proper

party to bring the action, as a trustee had not been appointed under the Chapter 11 reorganization plan and the debtor in possession had interests in common with the defendants in this case." *In re Chase & Sanborn*, 813 F.2d at 1180 n. 1.

### 3. In addition to the exception set forth in § 1123, Courts have authorized other exceptions to the general rule regarding suits on behalf of the estate.

Although *Transit Group* and *Chase & Sanborn* both involve "creditor agents" who were designated under a chapter 11 plan, the concept of "derivative standing" is not limited to entities appointed pursuant to confirmed plans.

On the contrary, other entities that have been authorized to prosecute claims on behalf of a bankruptcy estate include an official committee of unsecured creditors (*In re iPCS, Inc.*, 297 B.R. at 290), and an official employment-related issues committee (*In re Enron Corporation*, 319 B.R. 128, 133 (Bankr.S.D.Tex.2004)). In each of these cases, the Court authorized the respective committee to assert the claim only after determining that pursuit of the litigation promoted the bankruptcy objective of collecting a potential asset of the estate.

Further, it is significant for purposes of this case that courts have also authorized individual creditors to pursue claims on behalf of the estate under certain circumstances. According to the Sixth Circuit Court of Appeals, "Congress has not precluded the bankruptcy court from granting standing to *a creditor* if such standing furthers Congress's purpose" in creating the bankruptcy laws. *In re The Gibson Group, Inc.*, 66 F.3d 1436, 1438 (6th Cir.1995)(Emphasis supplied).

In *In re Parmetex*, 199 F.3d 1029, 1030–31 (9th Cir.1999), for example, the Court held that two unsecured creditors had standing to pursue avoidance actions against various third parties, where the trustee had stipulated that the creditors could bring the actions on behalf of the estate, and the stipulation had been presented to the Court for approval.

Additionally, in *In re Greenberg*, 266 B.R. 45, 51 (Bankr.E.D.N.Y.2001), the Court held that the debtor's primary creditor was authorized to pursue certain avoidance actions against third parties, provided the actions were prosecuted on behalf of the estate, and further provided that any recovery was equitably distributed to the debtor's creditors. See also *In re Vogel Van & Storage, Inc.*, 210 B.R. 27, 33–34 (N.D.N.Y.1997) *aff'd* 142 F.3d 571 (2d Cir. 1998)(An individual creditor was permitted to prosecute an appeal on behalf of a Chapter 7 trustee, on the condition that the "proceeds of the action will be added to the estate and the estate as a whole will be divided between creditors according to the dictates of the Code.").

### 4. Under certain circumstances, authorized entities may pursue malpractice actions on behalf of the estate.

The decisions discussed above primarily involve avoidance actions that were asserted pursuant to specific provisions of the Bankruptcy Code. In addition to such avoidance actions, however, Courts have also authorized entities other than the trustee to pursue certain nonbankruptcy, or state law, claims on behalf of the estate.

The distinction between pursuing claims created by the Bankruptcy Code, and claims arising under state law, is important in view of decisions such as *Surf N Sun Apts., Inc. v. Dempsey*, 253 B.R. 490 (M.D.Fla.1999). In *Surf N Sun*, the Court determined that an individual creditor did not have standing to prosecute a fraudu-

lent transfer action on behalf of a Chapter 7 estate. *Surf N Sun*, 253 B.R. at 494. The fraudulent transfer action in that case was based on § 548 of the Bankruptcy Code, which expressly provides that *"the trustee* may avoid any transfer of an interest in property," to the extent that the transfer otherwise satisfies the requirements of that section. 11 U.S.C. § 548(a)(Emphasis supplied). Accordingly, it is clear that the Bankruptcy Code specifically delegated the cause of action to the trustee, to the exclusion of other interested parties in the bankruptcy case. *Id.* at 494("The plain meaning of section 548 is obvious: the Chapter 7 trustee has standing to pursue the action to the exclusion of all other affected parties.")(quoting *In re Adam Furniture Indus.*, 191 B.R. 249, 253 (Bankr.S.D.Ga.1996)).

The situation in *Surf N Sun*, therefore, is readily distinguishable from the situation before the Court. The claim at issue in this case is not a claim created by the Bankruptcy Code that was statutorily assigned to a specific party (the trustee) in a bankruptcy proceeding. The claim at issue in this case is a malpractice action that arose under nonbankruptcy law.

In appropriate circumstances, courts have authorized creditors or other entities to pursue such malpractice actions on behalf of the estate. Generally, of course, malpractice actions are not assignable under Florida law because of the nature of the attorney/client relationship and because of the public policy against selling such claims in the marketplace. *FDIC v. Martin*, 770 F.Supp. 623, 625–26 (M.D.Fla. 1991).

It appears, however, that the general rule prohibiting assignments may be subject to a very limited modification where the entity that acquires the malpractice action is not acting in his own personal interest, but instead represents the creditors or the estate of the initial holder of the claim. In the state court decision of *Kaplan v. Cowan Liebowitz & Latman, P.C.*, 832 So.2d 138 (Fla. 3d DCA 2002), for example, the Court held that a transferee pursuant to an assignment for the benefit of creditors had standing to bring a malpractice action that had belonged to the assignor.

The issue before us is whether an assignee (actually transferee) acting as a fiduciary for a corporation has standing to bring a legal malpractice action on behalf of the now-defunct corporation. . . .

Kaplan, as assignee for benefit of creditors, has the legal charge of gathering and liquidating the assets of the corporation. In that regard Kaplan is no different from a trustee in bankruptcy who has full standing to bring a debtor's legal malpractice claim.

*Kaplan*, 832 So.2d at 139–40. According to the state court, therefore, the key factor in determining the assignability of a malpractice action is whether the assignee is prosecuting the claim for the benefit of the former client's creditors.

Applying similar reasoning in connection with a bankruptcy decision, the District Court in *Parrett v. National Century Financial Enterprises, Inc.*, 2006 WL 783361 (S.D.Ohio) recently authorized the transfer of a debtor's legal malpractice action to a post-confirmation trust. Although the Court in that case acknowledged the general prohibition against the assignment of malpractice claims, it held that the trust could pursue the claim because the trust's purpose was to liquidate the estate's property for the benefit of the creditors, and that the "assignment" therefore did not affect the estate's creditors as the beneficial owner of the claim. *Parrett*, 2006 WL 783361, at *5.

### 5. Summary

Generally, the trustee or debtor-in-possession is the proper party to assert causes of action that are property of a bankruptcy estate. Section 1123 of the Bankruptcy Code provides a limited exception to the general rule for entities appointed under a Chapter 11 plan. As an additional limited exception, courts have authorized committees or individual creditors to pursue such claims under certain circumstances. In order to bring an action that belongs to a bankruptcy estate, however, the committee or creditor must have been expressly authorized by the Court to assert the claim, and must pursue the action solely for the benefit of the estate.

### B. Application

■ In this case, the Court finds that Maxfield was authorized to prosecute the Debtor's malpractice action against the Defendants on behalf of the bankruptcy estate.

### 1. Maxfield was authorized by the Court to assert the claims.

On December 29, 2004, Maxfield filed a Renewed Motion for Leave to Pursue Designated Claims on Behalf of the Bankruptcy Estate. (Main Case Doc. 946). In the Motion, Maxfield alleged that no other parties were available to pursue the malpractice claims against the Defendants, and requested authorization from the Court to prosecute the claims for the benefit of the estate.

On March 24, 2005, the Court entered an Order Authorizing Maxfield to Pursue Malpractice Claims on Behalf of the Estate. (Main Case Doc. 1145).

The Order was entered following an evidentiary hearing conducted by the Bankruptcy Court. Based on the evidence admitted at the hearing, the Court made specific findings of fact relating to the allegations contained in Maxfield's Motion.

The Court found, for example, that "there may be colorable claims against Quarles & Brady relating to (i) the estate's security interests in the assets of B.L. Jennings, Inc. and to (ii) certain claims against RKB Investments."

The Court's finding of "colorable claims" is significant, because it evidences the Court's determination that an asset of possible value to the estate was at stake in the proceeding. See *In re iPCS, Inc.*, 297 B.R. at 290("[I]f a debtor has a cognizable claim, but refuses to pursue that claim, an important objective of the Code [the recovery and collection of estate property] would be impeded if the bankruptcy court has no power to authorize another party to proceed on behalf of the estate in the debtor's stead."). See also *In re Gibson Group, Inc.*, 66 F.3d at 1438 (A creditor should be permitted to initiate an action, in lieu of the debtor, if it has alleged a colorable claim that would benefit the estate, if successful.).

Additionally, the Court in this case made the following findings regarding the inability of the Debtor to effectively pursue the claims, and the absence of any other entity to preserve the claims for the estate.

Although Mr. Jennings himself has not technically refused to pursue the malpractice claims, the Court finds that there may be certain inherent conflicts of interest in Mr. Jennings pursuing the malpractice claims himself. The Court finds further that there is no effective remedy for creditors of the estate if Mr. Jennings failed to pursue the claims in a timely or diligent fashion. The Court therefore finds that Mr. Jennings should not be the person charged with the task of pursuing the claims against Quarles & Brady. There is no creditor's committee in this case, nor has any Chapter 11

trustee been appointed. The Court has also not yet determined whether conversion of the case to Chapter 7 would be appropriate.

(Main Case Doc. 1145, pp. 1–2). These findings evidence the Court's determination that Jennings was unable to meaningfully assert the malpractice claims because of conflicting loyalties to his former lawyers and to the estate. The findings are sufficient to support the Court's decision to allow Maxfield to pursue the malpractice action on behalf of the estate. See *In re National Forge Company*, 326 B.R. 532, 550 (W.D.Pa.2005)(Committee was authorized to pursue claims for the estate, where the debtor was not in a position to prosecute the claims because of competing interests.). See also *Louisiana World Exposition v. Federal Insurance Company*, 858 F.2d 233, 252 (5th Cir.1988)(Committee was authorized to assert a cause of action on behalf of the estate where the debtor was "unable or unwilling to fulfill its obligation—due, for instance, to a conflict of interest.").

Based on its findings, the Court granted the Motion, and expressly ruled that Maxfield "is authorized, but not required, to pursue any and all claims which the estate of Bruce L. Jennings may hold against Quarles & Brady arising out of their representation of Mr. Jennings."

Maxfield was authorized by the Court to assert the malpractice claims against the Defendants.

## 2. Maxfield was authorized to pursue the claims solely on behalf of the bankruptcy estate.

It is clear from the Order entered on March 24, 2005, that Maxfield was authorized to assert the malpractice claims solely on behalf of the bankruptcy estate, and not for his own personal benefit. The Order is replete with references to the interest of the bankruptcy estate as paramount.

The complete title of the Order, for example, is Order Authorizing Brandon J. Maxfield to Pursue Malpractice Claims *on Behalf of the Estate of Bruce Lee Jennings*, Debtor. (Emphasis supplied).

In the text of the Order, the Court finds that "there is no effective remedy for creditors *or the estate* if Mr. Jennings failed to pursue the claims." (Emphasis supplied). The Court further notes that no creditors' committee or Chapter 11 trustee was appointed in the case to represent the interests of the estate, and that it was appropriate to permit Maxfield to pursue "any and all claims against Quarles & Brady *on behalf of Bruce Lee Jennings' estate.*" (Emphasis supplied.)

In the first ordering paragraph, the Court specifically granted Maxfield's "motion for leave to pursue claims *on behalf of the estate.*"

Finally, in ordering paragraph 3, the Court authorized Maxfield or his attorneys to file an application for compensation in accordance with § 330 of the Bankruptcy Code, to the extent that they "create *a benefit to the estate.*" (Emphasis supplied). Section 330, of course, provides that a court may award compensation to a professional who was employed under § 327 "to represent or assist the trustee in carrying out the trustee's duties" under the Bankruptcy Code. *In re Keller Financial Services of Florida, Inc.*, 243 B.R. 806, 815–16 (Bankr.M.D.Fla.1999). By authorizing Maxfield to seek compensation under this section, the Court further indicated its intent to appoint Maxfield as an officer of the estate.

Given the clear language of the Order entered on March 24, 2005, the Court finds that Maxfield was authorized to pursue the

malpractice claims against the Defendants solely on behalf of the bankruptcy estate.

### 3. The Motion for Substitution should be granted in part.

The Order Authorizing Maxfield to Pursue Malpractice Claims on Behalf of the Estate was entered on March 24, 2005, while the case was pending as a Chapter 11 case.

No motion for reconsideration or other request for relief from the Order was filed pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.

On June 7, 2005, less than three months after the Order was entered, the Court converted the case to a case under Chapter 7, and Crews was appointed as the Chapter 7 Trustee. (Main Case Doc. 1268).

As set forth above, § 323 of the Bankruptcy Code provides that the trustee in a bankruptcy case "is the representative of the estate," and has the capacity to sue and be sued. 11 U.S.C. § 323.

Rule 17(a) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7017 of the Federal Rules of Bankruptcy Procedure, provides that "[e]very action shall be prosecuted in the name of the real party in interest."

Maxfield and Crews jointly filed the motion currently under consideration, and seek to substitute Crews as the plaintiff in this action pursuant to Rule 17(a). The Motion should be granted in part.

Maxfield was authorized to file the malpractice action on behalf of the estate in accordance with the Order entered on March 24, 2005. The Complaint was filed on May 13, 2005.

■ Obviously, Crews could not have filed the initial Complaint, because he had not yet been appointed as the Chapter 7

Trustee at the time that the action was filed. Since Crews is now the representative of the estate pursuant to § 323, however, it is appropriate for him to prosecute the action as the real party in interest within the meaning of Rule 17(a).

Consequently, the Motion to Substitute Party Plaintiff should be granted in part, and Crews should be substituted as the plaintiff in this action to the extent that the action was brought on behalf of the bankruptcy estate.

The Complaint, however, reflects that Maxfield commenced the action both "individually, and on behalf of the Estate of Bruce Lee Jennings." To the extent that the action was filed by Maxfield individually, therefore, the Motion for Substitution should be denied, and Crews should not be substituted for Maxfield as the plaintiff in his individual capacity.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Substitute Party Plaintiff filed by the Plaintiff, Brandon James Maxfield, and by the Trustee, Gregory K. Crews, is granted in part and denied in part as set forth in this Order.

2. The Motion is granted to the extent that it seeks to substitute Gregory K. Crews, Trustee, as the Plaintiff in this action on behalf of the Estate of Bruce Lee Jennings. Gregory K. Crews, Trustee, is substituted for Brandon J. Maxfield as the Plaintiff, to the extent that Brandon J. Maxfield commenced the action on behalf of the Estate of Bruce Lee Jennings.

3. Gregory K. Crews, Trustee, is not substituted for Brandon J. Maxfield as the Plaintiff, to the extent that Brandon J. Maxfield commenced the action in his individual capacity.