DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ARCH INSURANCE COMPANY,**
Appellant,

v.

**KUBICKI DRAPER, LLP,** a law firm,
Appellee.

No. 4D17-2889

[January 23, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T. Case No. 08 25361 (26).

Benjamin J. Biard and Brittany P. Borck of Winget Spadafora Schwartzberg, LLP, Miami, and Frank A. Shepherd and Lesley-Anne Marks of GrayRobinson, P.A., Miami, for appellant.

Christopher J. Lynch and Steven K. Hunter of Hunter & Lynch, Coral Gables, for appellee.

GERBER, C.J.

The appellant insurer appeals from the circuit court's final judgment granting the appellee law firm's motion for summary judgment, which argued that the insurer lacked standing to sue the law firm. We agree with the circuit court's reasoning that the insurer was not in privity with the law firm, and thus the insurer lacked standing to sue to the law firm. We further conclude that the insurer's suit did not qualify under the privity rule's two exceptions which our supreme court has recognized. Therefore, we affirm.

We present this opinion in three sections:
1. The procedural history;
2. The circuit court's order granting summary judgment; and
3. Our review.

# 1. *Procedural History*

The insurer hired the law firm to defend the insured in a separate suit. After the separate suit settled within the insured's policy limits, the insurer sued the law firm for professional negligence, i.e., legal malpractice. The insurer's negligence suit alleged, in pertinent part, that the law firm's delayed filing of the insured's statute of limitations defense resulted in a large settlement, using the insurer's funds, which would have been avoided, in whole or in part, if the law firm had raised the insured's statute of limitations defense earlier in the separate suit.

In response to the insurer's suit, the law firm filed a motion for summary judgment. The law firm's motion alleged, in pertinent part, that the insurer lacked standing to sue the law firm because the insurer and the law firm were not in privity with each other.

In support of its motion, the law firm primarily relied on two cases: *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378 (Fla. 1993), and *Angel, Cohen & Rogovin v. Oberon Investment, N.V.*, 512 So. 2d 192 (Fla. 1987). In *Espinosa*, our supreme court held:

> An attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract. In a legal context, the term "privity" is a word of art derived from the common law of contracts and used to describe the relationship of persons who are parties to a contract. To bring a legal malpractice action, the plaintiff must either be in privity with the attorney, wherein one party has a direct obligation to another, or, alternatively, the plaintiff must be an intended third-party beneficiary.

*Id.* at 1379-80 (internal citations omitted). In *Angel*, our supreme court held:

> Florida courts have uniformly limited attorneys' liability for negligence in the performance of their professional duties to clients with whom they share privity of contract. The only instances in Florida where this rule of privity has been relaxed is where it was the apparent intent of the client to benefit a third party. . . . Florida courts have refused to expand this exception to include incidental third-party beneficiaries.

512 So. 2d at 194 (internal citations omitted).

2

After relying on *Espinosa* and *Angel*, the law firm's motion further alleged, in pertinent part:

> No Florida case law recognizes an attorney-client duty owed by defense counsel to an insurance carrier where the attorney is hired to defend an insured with respect to a liability claim filed under the carrier's policy. [Here, u]nder its insuring agreement with [the insurer], subject to [the insurer's] "review and consent," which would "not be unreasonably withheld," [the insured] had the right to appoint its own legal counsel to defend any covered claim. . . .
>
> Further, nowhere on the face of the relevant documents . . . relating to the retention of [the law firm], such as the statement of Clients' Rights, is there any indication that with respect to the [underlying] matter, [the law firm] would be representing [the insurer] in addition to [the insured]. Very simply, for that to have been the case, there would have to have been a disclosure to [the insured] that [the law firm] was undertaking the dual representation of [the insured] and [the insurer]. There is[,] however, no such agreement to that effect. . . .
>
> [The law firm] was in privity of contract with [the insured] and the [insurer's] role was that of a third party paying [the law firm] to represent [the insured]. . . .
>
> [T]he undisputed facts show that during the course and scope of [the law firm's] representation of [the insured,] an opportunity arose to resolve the matter against [the insured] and it was [the law firm's] duty to ensure that the matter was resolved within the limits of the policy providing coverage so as to avoid any exposure to [the insured] in excess of those policy limits. As a net result, the insured . . . has suffered no damages as a result of any alleged actions or inactions on the part of [the law firm].

### 2. *The Circuit Court's Order Granting Summary Judgment*

The circuit court granted the law firm's motion for summary judgment. The circuit court's order reasoned, in pertinent part:

After careful review, the court determines that [the insurer] lacks standing to directly pursue the claims against [the law firm] in the instant action. Attached to the retention letter sent to [the insured] by [the law firm] was a Statement of Client's Rights demonstrating that [the insured] was in privity with [the law firm] as [the law firm's] client . . .

[The insurer's] reliance on *Hartford Insurance Co. of Midwest v. Koeppel,* 629 F. Supp. 2d 1293 (M.D. Fla. 2009) *("Koeppel"), Nova Casualty Co. v. Santa Lucia,* No. 8:09-cv-1351-T-30AEP, 2010 WL 3942875 (M.D. Fla. Oct. 5, 2010) *("Nova"),* and *U.S. Specialty Insurance Co. v. Burd,* 833 F. Supp. 2d 1348 (M.D. Fla. 2011) *("Burd"),* does not persuade this Court otherwise. As an initial matter, these cases are not binding on this Court, but rather, only constitute persuasive authority. *See Carnival Corp. v. Carlisle,* 953 So. 2d 461, 465 (Fla. 2007) ("Generally, state courts are not required to follow the decisions of intermediate federal appellate courts [or federal district courts] . . . . Although state courts are bound by the decisions of the United States Supreme Court . . . there is no similar obligation with respect to decisions of the lower federal courts.").

Moreover, in *Koeppel,* the federal court recognized that there is no controlling Florida precedent, requiring it to *"guess"* (the federal court's terminology) that "the Florida courts would extend the strict privity exception and recognize an insurer's legal malpractice claim against an attorney retained to represent its insured." *Koeppel,* 629 F. Supp. 2d at 1301 (emphasis added). In *Nova,* the federal court followed *Koeppel's "guess,"* and noted that it was *"forced to predict* how the Florida courts would rule if they were presented with the issue." *Nova,* 2010 WL 3942875, at *2 (emphasis added) (citing *Koeppel,* 629 F. Supp. 2d at 1298). Likewise, in *Burd,* the federal court relied upon *Koeppel's "guess"* and *Nova's "forced prediction"* in reaching the conclusion that an insurer may file a legal malpractice claim against the law firm it retains to represent its insured. *See Burd,* 833 F. Supp. 2d at 1352-53 (emphasis added). This court will not adopt new expansive precedent that is based on "guesses" and "forced predictions" when the Florida Supreme Court to date has so severely limited exceptions in this area of the law. Furthermore, the court determines that *Koeppel* and *Burd* are distinguishable from the instant action. For instance, in

*Koeppel* and *Burd* the attorneys were hired to defend a carrier's interest in effecting a settlement under liability policies. In the instant action, [the law firm] was retained to defend the interests of [the insured] against liability claims. Additionally, unlike the instant action, in *Koeppel* and *Burd,* the insurance companies settled the underlying claims <u>in excess</u> of the policy limits of the subject insurance policies. As noted above, it is undisputed in the instant action that the [u]nderlying [l]itigation was settled within the policy limits of the insurance policy issued by [the insurer].

The court also determines that *Nova* is distinguishable from the instant action. In that case, the federal court determined that there was privity between the insurance carrier, Nova, and the law firm, Santa Lucia. As discussed above, however, there is no privity between [the insurer] and [the law firm], and none of the recognized exceptions to the strict privity requirement apply in [the] instant action.

### 3. *Our Review*

This appeal followed. Our review is de novo. *See Volusia Cty. v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000) (standard of appellate review applicable to grant of summary judgment is de novo); *Johnson v. State*, 78 So. 3d 1305, 1314 (Fla. 2012) ("Determining whether a party has standing is a pure question of law to be reviewed de novo.") (citation omitted).

Based on our review of the record, we agree with the circuit court's conclusion that the law firm was in privity with the insured as the client. We see nothing in the record to indicate that the law firm was in privity with the insurer. We also see nothing in the record to indicate that the insurer was an intended third-party beneficiary of the relationship between the law firm and the insured. We further adopt the circuit court's well-reasoned order, distinguishing the federal cases upon which the insurer relies, as our own reasoning.

The insurer nevertheless argues public policy and common sense dictate that an insurer should be able to pursue legal malpractice claims against defense counsel retained to represent its insureds. According to the insurer:

Logic dictates that an insurer can pursue a legal malpractice claim against the law firm it hired for its insured because it

5

retained the law firm to protect the insured's rights, and a law firm is liable for the malpractice it commits. Currently, no Florida appellate court has issued a decision on point addressing an insurer's standing to pursue a claim for legal malpractice against the law firm it hired to defend its insured. However, several Florida federal courts have issued opinions predicting Florida law's recognition of an insurer's right to pursue a malpractice claim against the law firm it retained for its insured if the malpractice increased the insured's exposure and the insurer paid to resolve the claim against the insured [citing *Nova, Koeppel,* and *Burd*].

Precluding an insurer from bringing a malpractice action against the law firm retained for its insured would have dire consequences. Essentially, law firms would be shielded from liability resulting from their malpractice. Both Florida federal courts and courts from other jurisdictions have discussed at length the important policy reasons supporting their decision to allow an insurer to seek redress for . . . legal malpractice against the law firm it retained for its insured. *See, e.g., Koeppel,* 629 F. Supp. 2d at 1300 (denying an insurer's right to pursue its insured's legal malpractice claim serves only the interests of retained defense counsel by providing blanket protection from legal malpractice claims); *Am. Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W. 2d 480, 485 (Tex. 1992) ("Refusal to permit the excess carrier to vindicate that right would burden the insurer with a loss caused by the attorney's negligence while relieving the attorney from the consequences of legal malpractice."); *see also Great. Am. E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.,* 100 So. 3d 420, 424 (Miss. 2012) (en banc) ("We hold only that, when lawyers breach the duty they owe to their clients, excess insurance carriers, who – on behalf of the clients – pay the damage, may pursue the same claim the client could have pursued. Holding otherwise would place negligent lawyers in a special category of protection.").

We understand the insurer's public policy argument. However, we are bound to follow the law as it exists, not as the insurer argues it ought to be. Our supreme court has recognized only two situations in which a third party was permitted to pursue a legal malpractice claim against counsel who was not in privity with the third party, neither of which applies here: (1) a will drafting situation, *see Angel,* 512 So. 2d at 194 ("The only instances in Florida where this rule of privity has been relaxed is where it

6

was the apparent intent of the client to benefit a third party. The most obvious example of this is the area of will drafting."); and (2) a private placement situation, *see Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 757 (Fla. 2005) ("[B]ecause lawyers preparing private placement memoranda, like independent auditors, owe a duty to those who rely on statements contained in their published documents, parties may assign claims for legal malpractice committed in preparing them.").

Based on the record before us, where nothing indicates that the law firm was in privity with the insurer, or that the insurer was an intended third-party beneficiary of the relationship between the law firm and the insured, we are unwilling to expand the field of privity exceptions to apply to this case. Thus, we affirm the circuit court's conclusion that the insurer lacked standing to pursue a professional negligence claim against the law firm in the underlying action.[1]

*Affirmed.*

FORST and KLINGENSMITH, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

---

[1] The Fifth District also recently addressed a professional negligence claim against an attorney who argued in a motion to dismiss that he was not in privity with the plaintiffs. However, our sister court held that the plaintiffs' second amended complaint sufficiently alleged an ongoing attorney-client relationship between the plaintiffs and the attorney, or in the alternative that the plaintiffs were intended third-party beneficiaries of the attorney's services. *See E.P. v. Hogreve*, 2018 WL 6715555 (Fla. 5th DCA Dec. 21, 2018) (trial court erred in dismissing second amended complaint). Given the different procedural posture between *Hogreve* (motion to dismiss stage), and this case (summary judgment stage), we consider *Hogreve* to be distinguishable from our decision in this case.