# Supreme Court of Florida

_____

No. SC19-673
_____

**ARCH INSURANCE COMPANY,**
Petitioner,

vs.

**KUBICKI DRAPER, LLP,**
Respondent.

June 3, 2021

POLSTON, J.

We review the Fourth District Court of Appeal's decision in

*Arch Insurance Co. v. Kubicki Draper, LLP*, 266 So. 3d 1210 (Fla. 4th

DCA 2019), in which the Fourth District certified the following

question of great public importance:

> WHETHER AN INSURER HAS STANDING TO MAINTAIN
> A MALPRACTICE ACTION AGAINST COUNSEL HIRED TO
> REPRESENT THE INSURED WHERE THE INSURER HAS
> A DUTY TO DEFEND.

*Id.* at 1215.[1]  We rephrase the certified question as follows:

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

WHETHER THE INSURER HAS STANDING THROUGH ITS CONTRACTUAL SUBROGATION PROVISION TO MAINTAIN A MALPRACTICE ACTION AGAINST COUNSEL HIRED TO REPRESENT THE INSURED WHERE THE INSURER HAS A DUTY TO DEFEND.

For the reasons explained below, we answer the rephrased certified question in the affirmative, quash the Fourth District's decision, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case involves a legal malpractice action by an insurer against a law firm retained to represent its insured in a separate prior litigation. Spear Safer CPAs and Advisors (Spear Safer)[2] is an accounting firm that performed audits of the financial statements of Mutual Benefits Corporation (MBC). MBC was in the viatical and life settlement business and became subject to an action by the Securities and Exchange Commission (SEC) "for the violation of various federal securities regulations in the trade of life insurance policies of terminally ill people." *S.E.C. v. Mut. Benefits Corp.*, 323 F. Supp. 2d 1337, 1337 (S.D. Fla. 2004). The SEC ultimately

---

2. There are differing names used in the record for this entity. The record below also refers to "Spear Safer CPAs & Consultants, L.P." and "Spear, Safer, Harmon & Company, PC."

reached a settlement with MBC. MBC, through a court-appointed receiver, then filed a lawsuit in federal court against Spear Safer for alleged accounting malpractice.

This lawsuit against Spear Safer by MBC gave rise to its claim on its professional liability policy with Arch Insurance Company (Arch). Pursuant to the insurance policy, Arch had a duty to defend Spear Safer:

> We [Arch] have the right and duty to defend any Claim made against you [Spear Safer]. Subject to our review and consent, you have the right to appoint legal counsel to defend any covered Claim and such consent will not be unreasonably withheld or delayed by us. No legal counsel shall be appointed without our prior approval. Subject to prior written notice to you, we reserve the right to remove and replace selected counsel if it is deemed by us that such action is warranted.

The insurance policy also included the following subrogation provision:

> To the extent of any payment under this Policy, we [Arch] shall be subrogated to all your [Spear Safer] rights of recovery therefor against any person, organization, or entity and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. You shall do nothing after any loss to prejudice such rights.

In accordance with the terms of the insurance policy, Arch retained Kubicki Draper, LLP (Kubicki) to defend its insured, Spear

Safer, in the separate underlying federal litigation filed by the receiver. Kubicki sent an engagement letter informing Spear Safer that Kubicki had been retained by Arch to represent and defend Spear Safer. Just before trial, the underlying litigation settled within the insured's policy limits for $3.5 million.

Arch subsequently filed the present lawsuit against Kubicki under various legal theories. At the heart of Arch's lawsuit against Kubicki is that the underlying federal litigation filed by the receiver against Spear Safer was barred by the applicable statute of limitations, and Kubicki's failure to timely raise the statute of limitations defense significantly increased the cost of settlement.

Arch filed various complaints, subject to Kubicki's motions to dismiss, alleging legal malpractice, breach of fiduciary duty, subrogation, assignment, third-party beneficiary, and breach of contract claims. Kubicki filed a motion for summary judgment arguing, in pertinent part, that Arch lacked standing to sue Kubicki because there was no privity of contract or attorney-client relationship between Arch and Kubicki. Arch countered that there was privity between Arch and Kubicki. Alternatively, Arch argued that it was an intended third-party beneficiary and that the

insurance policy provided Arch subrogation rights. The trial court granted Kubicki's motion for summary judgment, concluding that Arch lacked standing to directly pursue a legal malpractice action against Kubicki. The trial court reasoned that there was no privity between Arch and Kubicki, and therefore, Kubicki did not owe Arch a duty of care.

On appeal to the Fourth District, Arch argued alternatively that it has standing to maintain a legal malpractice action based on privity with Kubicki, as an intended third-party beneficiary, and as subrogee of Spear Safer's legal malpractice claim against Kubicki. The Fourth District "agree[d] with the circuit court's reasoning that the insurer was not in privity with the law firm, and thus the insurer lacked standing to sue the law firm." *Arch Ins. Co.*, 266 So. 3d at 1211. The Fourth District explained that there was "nothing in the record to indicate that the law firm was in privity with the insurer" and "nothing in the record to indicate that the insurer was an intended third-party beneficiary of the relationship between the law firm and the insured." *Id.* at 1214. The Fourth District also adopted the trial court's order as its own reasoning. *Id.* In response to Arch's public policy concerns that law firms

would be shielded from liability resulting from their malpractice, the Fourth District explained, "We understand the insurer's public policy argument. However, we are bound to follow the law as it exists, not as the insurer argues it ought to be." *Id.* Ultimately, the Fourth District "affirm[ed] the circuit court's conclusion that the insurer lacked standing to pursue a professional negligence claim against the law firm in the underlying action" and certified the above question of great public importance. *Id.* at 1215.[3]

## II. ANALYSIS

Arch alleges that an insurer has standing to maintain a legal malpractice action against counsel hired to represent the insured where the insurer has a duty to defend. Kubicki counters that Arch does not have standing to bring a legal malpractice action because Kubicki was in privity with Spear Safer, and there was no privity between Kubicki and Arch. The circuit court agreed with Kubicki

---

3. The Fourth District denied Arch's request to certify the following additional question: "Whether the unique tripartite relationship between the insurer, insured, and law firm is a limited exception to the strict privity rule." *Arch Ins. Co.*, 266 So. 3d at 1215. The Fourth District explained that certification of the additional question was "subsumed within the first proposed certified question." *Id.*

that the law firm was in privity with the insured as the client. *Id.* at 1213. The Fourth District agreed, stating that "[w]e see nothing in the record to indicate that the law firm was in privity with the insurer." *Id.* at 1214. We agree with the circuit court and the Fourth District that Kubicki was in privity with the insured as the client rather than Arch. However, Arch also bases its standing argument, in part, on the subrogation provision in the insurance policy issued to Spear Safer. We agree with Arch and conclude that an insurer has standing to maintain a legal malpractice action against counsel hired to represent its insured where the insurer is contractually subrogated to the insured's rights under the insurance policy.[4]

Broadly defined, "[s]ubrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 18 So. 3d 1099, 1100 (Fla. 2d DCA 2009) (quoting *W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc.*, 495 So. 2d 204, 206 (Fla. 5th DCA 1986)); *see also*

---

4. The certified question presents a question of law, which we review de novo. *Travelers Com. Ins. Co. v. Harrington*, 154 So. 3d 1106, 1108 n.2 (Fla. 2014).

16 *Couch on Insurance* § 222:2 (3d ed. 2005) ("Subrogation is the substitution of one person in the place of another with reference to a lawful claim, demand or right . . . ."). "Subrogation is designed to afford relief when one is required to pay a legal obligation which ought to be met, either wholly or partially, by another." *Allstate Ins. Co. v. Metro. Dade Cnty.*, 436 So. 2d 976, 978 (Fla. 3d DCA 1983); *see also* 3 John Alan Appleman, *Insurance Law and Practice* § 1675 (1941) (explaining that the purpose of subrogation "is to place that loss ultimately upon the wrongdoer"). "Subrogation rights place a party . . . in the legal position of one who has been paid money because of the acts of a third party," and "the subrogee 'stands in the shoes' of the subrogor and is entitled to all of the rights of its subrogor . . . ." *Allstate Ins. Co.*, 436 So. 2d at 978. Florida law recognizes two types of subrogation: equitable (often referred to as legal) and contractual (often referred to as conventional). *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008).

Contractual subrogation "is based on an agreement between the parties that the party paying the debt will be subrogated to the rights and remedies of the original creditor." *E. Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n*, 508 So. 2d 1323, 1325 (Fla. 3d

DCA 1987). "Essentially, it is an agreement that 'the party paying the debt will be subrogated to the rights of the original creditor.' " *Cont'l Cas. Co.*, 974 So. 2d at 376 (quoting *Nat'l Union Fire Ins. Co. v. KPMG Peat Marwick*, 742 So. 2d 328, 332 (Fla. 3d DCA 1999), *approved*, 765 So. 2d 36 (Fla. 2000)). "[A]n insurer's subrogation right may be expressly provided for by a clause that is included either in the applicable insurance policy or in a settlement agreement with an insured . . . ." *Nat'l Union Fire Ins.*, 742 So. 2d at 332.

Arch's right to contractual subrogation is expressly provided for in the insurance policy:

> To the extent of any payment under this Policy, we [Arch] shall be subrogated to all your [Spear Safer] rights of recovery therefor against any person, organization, or entity and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. You shall do nothing after any loss to prejudice such rights.

The language of the subrogation provision is clear—Arch is contractually subrogated to the rights of Spear Safer, which would include claims for legal malpractice against counsel retained to defend the insured. *See* 16 *Couch on Insurance* § 222:31 ("[A]fter an insurance company has paid a loss on behalf of its insured under a

policy containing a subrogation of rights clause, it is entitled to subrogation by express contract rights."). Where an insurer has a duty to defend and counsel breaches the duty owed to the client insured, contractual subrogation permits the insurer, who—on behalf of the insured—pays the damage, to step into the shoes of its insured and pursue the same claim the insured could have pursued. *See, e.g.*, *Don Reid Ford, Inc. v. Feldman*, 421 So. 2d 184, 185-86 (Fla. 5th DCA 1982) (determining when the statute of limitations began to run on the malpractice action brought through subrogation against the defense attorney retained by the liability insurer where the defense attorney failed to appear for trial and a final judgment by default was entered against the insured); *Dantzler Lumber & Exp. Co. v. Columbia Cas. Co.*, 156 So. 116, 120-21 (Fla. 1934) (holding that the insurer had a subrogated claim against the insured's accountants for negligence).

In accordance with the terms of the insurance policy, Arch retained Kubicki to defend Spear Safer and paid the $3.5 million settlement against its insured. Accordingly, we conclude that Arch

- 10 -

has standing through contractual subrogation to maintain a malpractice action against counsel hired to represent its insured.[5]

Kubicki argues that the parties stipulated at a trial court hearing that Arch abandoned its subrogation, assignment, and third-party beneficiary claims, pointing to the trial court's order entered in response to Kubicki's motion to dismiss Arch's Second Amended Complaint, which stated: "All counsel appear and state all parties agree. ORDERED AND ADJUDGED that said motion be, and the same is hereby granted to extent Arch seeks recovery as assignee or subrogee of Spear Safer or intended third party beneficiary of attorney-client relationship between Kubicki Draper and Spear Safer." However, Arch counters that the trial court's order is simply an acknowledgement that the order reflected the trial court's prior ruling on dismissal, not that Arch agreed with the

---

5. Because Arch has direct subrogation claims through its insurance policy with insured Spear Safer, we do not reach any third-party beneficiary arguments. A third-party beneficiary asserts rights through a contract between other parties. *See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 544 (Fla. 5th DCA 2003) ("A third party may sue under a contract as an intended third party beneficiary only if the parties express, or the contract clearly expresses, the intention to primarily and directly benefit the third party.").

trial court's decision on the merits or that it abandoned its claims. Arch notes that there is nothing otherwise in the record to evidence its purported abandonment. To the contrary, the record shows that Arch continued to argue its subrogation claim to the trial court, the Fourth District, and to this Court.

The Fourth District's opinion below did not address subrogation and instead focused on whether privity existed between Kubicki and Arch, concluding "that the insurer was not in privity with the law firm, and thus the insurer lacked standing to sue to the law firm." *Arch Ins. Co.*, 266 So. 3d at 1211. However, consistent with established principles of subrogation, because the *insured* is in privity with the law firm, contractual subrogation allows the insurer to step into the shoes of the insured. *See Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980) (explaining that, in a subrogation action, the subrogee stands in the shoes of the subrogor and can be subrogated to no greater rights than those possessed by the subrogor). Accordingly, contrary to the opinion's conclusion below, Arch would have standing to pursue a legal malpractice claim against Kubicki.

Kubicki also argues that this Court's public policy considerations have caused it to generally prohibit assignment of legal malpractice claims. However, this Court has recognized that there are exceptions when public policy is not applicable. *See, e.g., Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 760-61 (Fla. 2005) (holding that legal malpractice claims were assignable against attorneys who prepared private placement memoranda). This Court noted that "[c]ourts are mainly concerned about creating a market for legal malpractice claims." *Id.* at 760 ("The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty . . . ." (quoting *Goodley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83, 87 (Cal. Ct. App. 1976))). The public policy concern does not exist in these circumstances. The subrogated claim originates by contract from the insured to the insurer, the same entity who hired the lawyer in the first instance. *See* 16 *Couch on Insurance* § 222:31 (" 'Conventional subrogation' is contractual in nature, the product of an agreement between insured and

- 13 -

insurer."). The insurer is not a "stranger" to the attorney who is "bidding" on a cause of action and "exploiting" it. To the contrary, the insurer is trying to recover money it paid to its insured from the lawyer it hired. The lawyer is on notice of subrogation claims included in the policy, and Florida public policy does not support shielding the law firm from accountability for its professional malpractice. To the contrary, subrogation exists to hold premium rates down by allowing the insurers to recover indemnification payments from the tortfeasor who caused the injury. *See Cunningham v. Metro. Life Ins. Co.*, 360 N.W.2d 33, 37 (Wis. 1985) (subrogation "returns the excess, duplicative proceeds to the insurer who can then recycle them in the form of lower insurance premiums"); *see also* 22 Eric Mills Holmes, *Appleman on Insurance* § 141.1[D][3] (2d ed. 2003). ("Subrogation advances an important public policy by forcing the tortfeasor to bear the burden of reimbursing the insurer for indemnity payments to its insured."); 16 *Couch on Insurance* § 222:8 ("When the insurer has made payment for the loss caused by a third party, it is only equitable and just that the insurer should be reimbursed for its payment to the insured, because otherwise either the insured would be unjustly

enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured, the third party would go free notwithstanding the fact that he or she has a legal obligation in connection with the damage."). Accordingly, permitting the contractual subrogation claim alleging the law firm missed a statute of limitations defense to the detriment of the insured supports Florida public policy.

## III. CONCLUSION

For the above reasons, we answer the rephrased certified question in the affirmative, quash the Fourth District's decision in *Arch Insurance Co.*, and remand for proceedings consistent with this opinion. In doing so, we conclude that the insurer has standing to maintain a legal malpractice action against counsel hired to represent its insured where the insurer is contractually subrogated to the insured's rights under the insurance policy.

It is so ordered.

CANADY, C.J., and LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Fourth District - Case No. 4D17-2889

(Broward County)

Benjamin J. Biard and Brittany P. Borck of Winget Spadafora & Schwartzberg, LLP, Miami, Florida; and Edward G. Guedes and Eric S. Kay of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

for Petitioner

Christopher V. Carlyle and John N. Bogdanoff of The Carlyle Appellate Law Firm, Orlando, Florida; and Steven K. Hunter and Christopher J. Lynch of Hunter & Lynch, Coral Gables, Florida,

for Respondent

Katherine E. Giddings and Melanie Kalmanson of Akerman LLP, Tallahassee, Florida,

for Amicus Curiae American Property Casualty Insurance Association